PHILIP S. HARRIS *vs.* CORLIES, CHAPMAN & DRAKE.

January 30, 1889.

Landlord and Tenant—Building Partially Untenantable by "the Elements."—A lease of a building contained a provision that if at any time during the term the demised premises "should be rendered partially untenantable *by fire or the elements,*" but the business of the lessee could still be conducted therein while the same were being repaired, then the lessor should repair the same as soon as practicable, the occupancy of the lessee to continue during such repairs, and for such occupancy he should pay the fair value until the repairs were completed, and thereafter the rent stipulated in the lease, as if no such disturbance had occurred. During the term the basement of the building became so wet and unhealthy as to be untenantable by reason of springs of water percolating and oozing through and under the basement walls. *Held,* that the basement was not rendered untenantable "by the elements," within the meaning of the lease; that it refers only to some sudden, unusual, or unexpected action of the elements, as floods, tornadoes, and the like, occurring during the term, and not to the natural and ordinary results of an efficient cause existing at the time of the demise, such as the manner of construction of the building, or the nature of the soil upon which it was erected.

Plaintiff brought this action against defendant, (a corporation,) in the district court for Ramsey county, to recover rent reserved in a lease. The defendant, in its answer, claimed an abatement from the rent for a period during which, as it alleged, the premises were rendered partially untenantable from the causes stated in the opinion. A jury was waived and the action tried by *Wilkin,* J., who ordered judgment for plaintiff, which was entered, and the defendant appealed.

*Young & Lightner,* for appellant.

*Warner & Lawrence,* for respondent.

MITCHELL, J. The defendant leased from the plaintiff, for a term of years, the first story and basement of a brick building in the city of St. Paul. The lease contained the following provision, to wit: "*If at any time during said term* the demised premises shall be *rendered* partially untenantable *by fire or the elements,* but so that the business then being done therein can be successfully conducted therein

while the same are being *repaired,* then said party of the first part [the lesssor] * * * *shall properly repair* the same as soon as practicable after notice thereof in writing, and occupancy and use thereof shall be continued during said repairs; and for such occupation and use the fair value thereof shall be paid, instead of said rent, until such repairs shall have been completed; whereupon and thereafter rent under and according to this lease shall be thereafter paid as if no such *disturbance* had occurred." The court below found that during the term "the said basement became so damp and wet and unhealthy as to be untenantable, and unfit for use by the defendant in its business; that said premises were so rendered untenantable by springs of water percolating and oozing through and under the walls of said basement from the exterior of said building."

The sole question is whether, upon these facts, the basement was rendered untentantable "by the elements," within the meaning of the lease.

The terms "the elements," and "damage by the elements," are somewhat uncertain and indefinite expressions, and very little aid will be derived from resorting to any technical or scientific discussion of the meaning of the word "elements." We should rather look to see whether the word has received any fixed and accepted meaning in the language of leases, and take the contract by its four corners, and try to ascertain how such an expression would be ordinarily understood by conveyancers and business men. The expression "by fire or the elements" occurs twice elsewhere in this lease. Immediately preceding the provision quoted is one to the effect that if the premises shall at any time during the term be rendered *wholly* untenantable "by fire or the elements," and the injured premises can be rebuilt or repaired within three months, then the lessor is to rebuild or repair, if the lessee shall so request, "within ten days after such *occurrence;*" otherwise such occurrence shall operate to terminate the lease. It is apparent that the expression, "by fire or the elements," is used in the same sense in both instances. The lease also contains a covenant on part of the lessee to surrender the premises at the expiration of the term in as good condition as the same were in when occupation under the lease began, usual wear and tear

of reasonable and careful use thereof, "and destruction thereof or injury thereto *by fire or the elements*, excepted." We think, with the defendant, that the expression is here used also in the same sense.

The lease contains no covenant on part of the lessor to make repairs, except those above quoted, and hence he was not bound to do so, much less to make improvements or betterments; the policy of the law being to require the tenant, before he takes a lease, to examine the premises, and elect, once for all, whether they will suit his purposes. While the finding is silent upon the subject, it is fair to assume that the percolation of water into the basement was not the result of any extraordinary or unusual occurrence, such as a flood or freshet, or of any cause originating subsequent to the demise, but was the natural result of a cause fully existing at and prior to the date of the lease, such as the wet or springy character of the soil on which the building is erected, or that adjacent, or some inherent defect in the plan of its structure, as the lack of proper drains to carry off the water of the oozing springs. In such a case, although the existence of the cause or its effects may not have developed until subsequently during a wetter season of the year, yet the efficient cause existed at the date of the demise, and the results were but the natural and ordinary operations of the laws of nature. To remedy such a defect would not in any proper sense be repairs, but a betterment,— putting the building in better condition than it in fact was when demised.

It can hardly be said that the parties intended by these clauses of the lease literally to include every case of untenantableness or partial untenantableness "by the elements." Every case of damage to or destruction of human structures, not caused by animal force, may, in one sense, be said to be caused by the elements, as, for example, ordinary gradual decay. But it would hardly be claimed that such a case would be within the meaning of the provisions of the lease. Or suppose, because of the manner of its construction, it should have proved, when winter arrived, that the basement was untenantable because of the cold, it would scarcely be urged that this came within the terms of the lease. We think that the language of the lease refers only to some sudden, unusual, or unexpected action of the ele-

ments occurring during the term, such as floods, tornadoes, or the like; extraordinary disasters, not anticipated by either party, the efficient cause of which originated after the term began, and which either destroyed the building, or left it in a materially and essentially worse condition than it was in when leased. We think this is substantially the sense in which such expressions in leases have always been used, and in which they would now be ordinarily understood by business men in executing such contracts. Fire is one of the elements in the same sense as water and wind are such; but inasmuch as fires, not from lightning, are usually caused by the intervention of human agency, there might be a question whether such damages were caused "by the elements," and hence the word "fire" was added to the phrase which has formed a part of the "surrender" and similar clauses in leases almost from time immemorial. The effect of the intervention of human agency in producing the damage was the point upon which two courts differed in the cases of *Polack* v. *Pioche*, 35 Cal. 416, and *Van Wormer* v. *Crane*, 51 Mich. 363, 373, (16 N. W. Rep. 686,)—a question upon the discussion of which we have no occasion to enter.

Defendant attempts to support its contention by arguing that if the untenantableness of the basement was not caused "by the elements," within the meaning of this provision of the lease, then it is not an injury by the elements, within the meaning of the exception in the "surrender" clause, and consequently it would be bound to repair or remedy the defect, which it is claimed would be unreasonable. But to our minds the force of the illustration is directly against the defendant. Under this covenant, the tenant is not required to make betterments, or to surrender the premises in better condition than when he entered, or to remedy defects then existing, which he clearly would if he was compelled to change the building so as to prevent the percolation of water into the basement. Our conclusion is in accordance with the views of the court below, viz., that the damage occasioned by the percolation of water through the side walls was not caused "by the elements," within the meaning of the lease.

Judgment affirmed.