MINNEAPOLIS CO-OPERATIVE COMPANY *vs.* JAMES F. WILLIAMSON.

Submitted on briefs July 7, 1892. Decided Aug. 17, 1892.

**Landlord and Tenant—Action for Rent.**

In an action to recover rent for a part of the term, it is a good defense that the tenant had previously surrendered the premises to the landlord, and that the latter had accepted the same.

**Certain Defenses Held not Inconsistent.**

Such a defense is not inconsistent with the further defense that the landlord had so neglected to comply with the requirements of the contract that the premises were untenantable, so that the tenant was compelled to abandon them.

**Laws 1883, ch. 100, Construed.**

Laws 1883, ch. 100, exempting tenants from the payment of rent where the premises have been "destroyed" or "so injured" by the elements or otherwise as to be untenantable, has no application except in the cases specified,—of such *destruction* or *injury*.

**Abandonment of Leased Premises—When Tenant Justified in.**

If the neglect of the landlord to perform daily duties required of him in heating and affording access to the premises is such as to justify the tenant in abandoning the same, it would ordinarily be a question of fact for the jury as to when, if at all, he should make his election whether he would remain in the premises or surrender them. Some forbearance on his part would not necessarily constitute a waiver of his right to abandon.

Appeal by plaintiff, The Minneapolis Co-operative Company, from a judgment of the District Court of Hennepin County, *Canty*, J., entered March 17, 1892, dismissing the action, and for $49.27, costs.

In April, 1889, the plaintiff leased to the defendant, James F. Williamson, by written lease, four rooms on the eighth floor of the Wright block in Minneapolis, for the term of one year from May 1, 1889, with the option to continue the tenancy for two years more, by giving written notice on or before March 1, 1890. This notice was never given, but the defendant remained in possession of the premises, and paid the rent therefor monthly, until February 28, 1891. Defendant ceased to actually occupy the rooms January 19, 1891, and on January 31st gave written notice of his intention to quit the premises on February 28, 1891. On that day the keys were delivered to the plaintiff.

This action was brought to recover $78 rent of the rooms for March and April, 1891. The answer averred, (1) that the tenancy was from month to month, and that due notice of defendant's intention to quit had been given; (2) that the premises were surrendered to the plaintiff February 28, 1891, and that the latter accepted the same; (3) that the lessor failed to properly heat the rooms, as provided by the lease, and failed to provide proper elevator service, and that such omissions amounted to a constructive eviction of defendant. On the trial, evidence was introduced tending to show the surrender of the premises by the delivery of the keys and their acceptance; that the rooms were insufficiently heated, and that the elevator service was not of the best. The court charged the jury that the tenancy was from year to year, and submitted the case to them on the questions whether there had been a surrender of the premises and acceptance thereof, or if not, whether defendant was justified in abandoning them. The jury found for the defendant, judgment was entered on the verdict, and plaintiff appealed.

*R. B. Forrest*, for appellant.

*Hart & Brewer*, for respondent.

DICKINSON, J. The plaintiff leased to the defendant certain rooms in the eighth story of a building or block for the term of one year

from May 1, 1889, the lessee having the option to continue the tenancy for two years longer, by giving notice before the expiration of the first year. No such notice was given, but the defendant remained in actual occupancy until about the middle of January, 1891, as is admitted, and remained legally in possession, paying rent, until February 28, 1891. The rent was payable monthly. This action is for the recovery of rent for the months of March and April, 1891, the last two months of the second year of the tenancy.

The plaintiff was not entitled to judgment on the pleadings. It may be conceded that the answer, in effect, admitted that the continued tenancy after the first year became a tenancy from year to year, so that the defendant could not terminate it, at his mere election, before the end of the year. But it was well averred, and constituted a defense, that he surrendered the possession to the plaintiff on the 28th of February, 1891, and that the latter accepted the same.

The defendant further alleged in defense an agreement in the lease, on the part of the lessor, that the lessor should provide adequate steam heat for the warming of the premises, and that the only practicable and reasonably convenient means of access to these rooms was by means of elevators in the building, controlled and operated by the lessor; that such steam heat and elevator service were essential to the comfortable occupancy or enjoyment of such rooms, but that "for a long time prior to the 28th day of February, 1891," the plaintiff failed to adequately warm the premises, as agreed, and failed to so operate the elevators as to afford reasonably convenient facilities of access to the same; that "for many months prior to said 28th day of February" the plaintiff so negligently and carelessly maintained and operated the elevators, and so failed to supply heat, that its acts and negligence "amount to a constructive eviction of this defendant from said premises, and for the reasons aforesaid it became and was necessary for this defendant, in order to preserve his business interests, to abandon the same."

We do not understand from the brief of the appellant (although some of the assignments of error are of wider scope) that it calls in question the sufficiency of the defense last referred to, except on the ground that the right to make such a defense was *waived* by reason

of the fact that the defendant remained in possession, recognizing the continuance of the tenancy, long after the default on the part of the plaintiff in the two particulars referred to; and perhaps (for this is not very clearly presented in the brief) that this is inconsistent with the defense that the rented premises were surrendered to and accepted by the plaintiff, and hence that the defendant should have been compelled to make an election as between those defenses. The appellant treats this defense as falling under the provisions of Laws 1883, ch. 100, and relies upon the decisions in *Roach* v. *Peterson*, 47 Minn. 291, and Id. 462, (50 N. W. Rep. 80, and Id. 601,) in support of his contention. That act relates to cases where leased premises have been *"destroyed"* or "so *injured* by the elements, or any other cause, as to be untenantable." It can hardly have any application in this case, in which no destruction or injury to the premises is alleged. In the case above cited there had been a partial destruction of the premises by fire, and it was held that under the statute cited, the tenant, if he would avail himself of the exemption from liability for rent, which is allowed by that law, must exercise his election to do so, and surrender possession, with reasonable promptness, which was considered not to have been done under the circumstances of that case. This case is different. While the statute above cited is not applicable, we assume, because in its brief the appellant does not contend to the contrary, that independent of the statute, the facts referred to constituted a sufficient justification for the abandonment of the premises, and a defense which might be termed a "constructive eviction." Similar defenses have been sustained. See *Lawrence* v. *Burrell*, 17 Abb. N. C. 312; *Tallman* v. *Murphy*, 120 N. Y. 345, (24 N. E. Rep. 716.) But we do not pass upon that. Upon the point as to whether the defendant waived his right of election by delay, it is to be observed that the grievance was not that the property had been injured or destroyed or rendered untenantable by reason of its own condition, as was the case with the burned building, but, especially as respects the elevator service, and as the jury might consider, as respects the heating also, it was a mere neglect of duty on the part of the landlord which might be corrected at any time. It was not necessarily and always the same, but must have depended daily upon

the daily conduct of the landlord or his servants. The extent of the inconvenience which would be suffered could not be anticipated with certainty, for the extent of the neglect from day to day in the future could not be known. Hence it could ńot be said that the defendant was bound, on the occurrence of the first neglect, to at once make his election whether he would surrender the premises. It would be a question for the jury whether his neglect to avail himself of the right to do so had been unreasonable under the circumstances.

The two defenses were not inconsistent. It was quite possible for the defendant to have abandoned or surrendered the premises because of their untenantable condition, and for the landlord to have *accepted* the surrender and to have resumed possession. Probably the idea that there was any inconsistency in the defenses arose from the applicability and use of the legal term *constructive eviction*, in connection with the neglect referred to.

There was no exception to the refusal of the court to instruct the jury as requested at the end of the case. Folio 388.

Matters referred to in the assignments of error, but not alluded to in the brief, are not considered. Judgment affirmed.

(Opinion published 52 N. W. Rep. 986.)