' DAVID ROSENSTEIN v. M. L. COHEN.[1]

November 24, 1905.

Nos. 14,605—(87).

**Landlord and Tenant—Alterations.**

It is sufficient ground for a refusal on the part of the lessee to accept the premises when tendered, where material changes have been made in the arrangement and condition of the building between the time of the execution of the lease and the time of delivering the premises to the lessee. This rule is not changed by the fact that the outgoing tenants caused the change in the condition of the premises without the knowledge or consent of the lessor.

**Rescission of Lease.**

The lessor having expressly stipulated in a lease that he should not be liable for alterations, improvements, and repairs, and the premises having become untenantable by reason of the natural processes of decay and faulty construction of the building, culminating either prior to or after the execution of the lease, whether the lessee may rescind the lease and avoid the contract upon such ground, quære.

Action in the municipal court of Minneapolis by plaintiff Rosenstein to recover from defendant Cohen $150 paid on account under an executory lease which plaintiff elected to rescind on the ground that the premises were not delivered to him at the time specified and that the same had meanwhile become uninhabitable. The case was tried before Waite, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Smith & Thompson*, for appellant.

In the absence of misrepresentation or fraud and where no particular agreement to put the premises in repair is made, the tenant takes them for better or for worse and the landlord is under no obligation to repair. There is no implied warranty that the premises are suitable for the purposes for which they are rented. Westlake v. DeGraw, 25

[1] Reported in 104 N. W. 965.

Wend. 669; Mumford v. Brown, 6 Cow. 475; Harris v. Corlies, Chapman & Drake, 40 Minn. 108; Roth v. Adams, 185 Mass. 341; Stevens v. Pierce, 151 Mass. 207; Bertie v. Flagg, 161 Mass. 504. There being no agreement by the landlord to repair, decay and delapidation of the building would not be a defense to an action for the rent as it accrued. Foster v. Peyser, 9 Cush. 242; Welles v. Castles, 3 Gray, 323; Szathmary v. Adams, 166 Mass. 145; Krueger v. Ferrant, 29 Minn. 385; Wilkinson v. Clauson, 29 Minn. 91. The premises were not rented with the distinct understanding that they were in good condition, and their condition therefore did not become a part of the consideration of the lease. Tyler v. Disbrow, 40 Mich. 415; Young v. Collett, 63 Mich. 331; Crawford v. Redding, 8 Misc. (N. Y.) 306; Harpel v. Fall, 63 Minn. 520; Wilkinson v. Clauson, supra; Krueger v. Ferrant, supra. The lessee of real property must run the risk of its condition unless he has an express agreement upon the part of the lessor in relation thereto. Franklin v. Brown, 21 J. & S. 474.

The statute (G. S. 1894, § 5871) relieving a tenant from the payment of rent does not apply where the premises are destroyed by gradual decay. Harris v. Corlies, Chapman & Drake, supra; Wampler v. Weinmann, 56 Minn. 1.

Rent once paid belongs to the lessor and cannot be recovered in suit brought by the lessee, even in states having a statute similar to ours. Felix v. Griffiths, 56 Oh. St. 39; Werner v. Padula, 49 App. Div. 135; Hill v. Woodman, 14 Me. 38; Cross v. Button, 4 Wis. 487.

*Simon Meyers,* for respondent.

LEWIS, J.

October 18, 1904, appellant, being the owner of a certain building in Minneapolis, entered into a written lease to rent the same to respondent for a period of five years from January 1, 1905, at $1,800 per annum, payable monthly in advance, and the lessee then paid the sum of $150 as advance rent for January. The building was two stories forty-four feet wide, and more than eighty feet in depth, and as originally constructed the floor was about three feet below the sidewalk, and at the time of the execution of the lease a second floor had been put in even with the sidewalk, being three feet above the original floor, and the first story had been divided by a partition, cutting it into two

stores, each of which was occupied. The roof and second-story floor were supported by means of trusses, and there were no supports or uprights running from the lower floor to the second floor. Immediately upon executing the lease appellant served notice on the occupants of the building to vacate by January 1, 1905. After January 1 the tenants not having surrendered the premises, negotiations were under way with a view of permitting one of the tenants to remain, respondent to surrender his lease and receive back his money, and the lessor to assume control of the building and lease it to other parties. Such negotiations proceeded for some time without effect, until January 26, when respondent served notice on appellant demanding immediate possession of the premises, and appellant commenced an action in forcible entry and unlawful detainer to secure possession, and February 7, in response to such action, the tenants moved out, taking with them the partition and floor, which, as stated, had been laid even with the sidewalk. In the meantime, and before the tenants moved out, on the suggestion of respondent, the building inspector of Minneapolis examined the building and reported to appellant that it was unsafe, for the reason that the trusses supporting the roof and the second story were badly deflected, and recommended that columns be put in on the first floor under the girders to support the second floor, and that the trusses be properly tightened and repaired. Respondent becoming aware of the condition of the building by the report of the inspector, and of the fact that the prior tenants had removed the floor and partition, notified appellant that he refused to accept the premises, and at once commenced this action to recover the $150 already paid on the ground that the consideration had failed. Action tried, and a verdict returned for respondent for the full amount.

The court instructed the jury, as a matter of law, that the premises had not been vacated and tendered to the lessee by the lessor prior to February 7, and submitted to them for determination whether or not the premises were on that day substantially in the same condition as at the time the lease was executed, and, if they should find that they were not in the same condition as when leased, then respondent could recover on that ground, unless the lessor stood ready to replace the partition and floor and promptly notified the lessee to that effect. The lease contained a provision to the effect that the lessor should not be

liable to make alterations, improvements, or repairs of any kind, but also contained the statutory provision that in case the buildings, without any neglect on the part of the lessee, be destroyed or so injured by the elements, or any cause, as to be untenantable and unfit for occupancy, then the liability of the lessee for rent should cease. There was evidence tending to show that the trusses supporting the roof and second floor had sagged and deflected to such an extent that the building became unsafe during the month of January, and the building inspector of Minneapolis made an examination and reported the fact to the lessor. This being one of the reasons assigned by plaintiff for canceling his lease, the court instructed the jury that if they should find that the building had become unsafe by reason of such facts, whether the cause originated prior or subsequent to the execution of the lease, it would be a good ground for rescinding the same on the part of the lessee.

The statutory provision adopted in this lease has been held to apply simply to those agents which caused sudden destruction or injury to property, such as fire or water, when of a sudden and unexpected nature. See discussion on "Elements," Harris v. Corlies, Chapman & Drake, 40 Minn. 106, 108, 41 N. W. 940; Minneapolis Co-operative Co. v. Williamson, 51 Minn. 53, 52 N. W. 986. If such construction be adhered to in a case like this, it would seem to be inherently unjust. There ought to be no distinction between those agents which silently and not obviously render premises untenantable, and those which are specifically recognized in the statute as doing their work suddenly and unexpectedly. It ought to be the rule that an owner shall be held to have waived the right to collect rent, when, from the very nature of the construction of the building, or by natural use thereof, it becomes dangerous, and for that reason untenantable. We will pass the question at this time by suggesting that it is deserving of legislative attention.

But on the other ground respondent was entitled to an instruction from the court to return a verdict for the full amount. The evidence was conclusive that the lessor did not cause the premises to be vacated and tendered to the lessee prior to February 7. Such negotiations as were had during January with reference to the disposition of the tenants in possession did not have the effect of conferring upon respondent possession of the premises. It being conceded that when the ten-

ants moved out in response to the action of forcible entry and detainer, on February 7, they took with them the floor that had been laid even with the sidewalk, and the partition, it follows as a matter of law, that the premises were so substantially changed in character that respondent had a right to then and there refuse to accept the same and to terminate his lease. It was unfortunate for appellant that he could not control the action of his tenants, and that he could not restore the premises immediately to their previous condition before respondent exercised his right to cancel the lease. The tenants were agents of the lessor, not of the lessee, and the former did not, as a matter of right, have the power to hold the lessee in waiting until the premises could be restored to their former condition. The court instructed the jury that the lessor had a reasonable length of time after being notified that the outgoing tenants had removed the floor and partition in which to restore them. In this the court was mistaken, but it was error without prejudice. On the undisputed evidence, respondent was entitled to a verdict, and there are no reversible errors.

Order affirmed.