BERLINGER et al. v. MACDONALD.

(Supreme Court, Appellate Division, First Department.  February 2, 1912.)

1. LANDLORD AND TENANT (§ 172*)—APARTMENTS—IMPLIED COVENANTS—DUTY TO HEAT.

The lessor of an apartment impliedly covenants to supply the heat necessary to keep the apartment warm and habitable, where the means of heating are under the landlord's control; and failure to provide such heat constitutes constructive eviction, though the tenant would not be justified in vacating the apartment because of insufficient heat on a particular occasion.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703;  Dec. Dig. § 172.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LANDLORD AND TENANT (§ 172*)—"CONSTRUCTIVE EVICTION."
   A "constructive eviction" is an obstruction to the beneficial enjoyment of leased premises by the landlord, but intent of the landlord to compel the tenant to vacate is not essential; it being sufficient that his acts tend to compel vacation.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703; Dec. Dig. § 172.*
   For other definitions, see Words and Phrases, vol. 2, p. 1470.]

3. LANDLORD AND TENANT (§ 233*)—APARTMENTS—CONSTRUCTIVE EVICTION—JURY QUESTION.
   In an action to recover rent for an apartment, defended on the ground of constructive eviction, whether the apartment was rendered uninhabitable through the landlord's failure to heat *held*, under the evidence, a jury question.
   [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 233.*]

Appeal from Trial Term, New York County.

Action by Milton Berlinger and another against Dwight Macdonald. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Arthur C. Bostwick, for appellant.

Walter Loewenthal, for respondents.

McLAUGHLIN, J. The plaintiffs are the owners of an apartment house, and bring this action to recover rent from January 1 to July 1, 1910, alleged to be due for an apartment therein. The answer sets up a defense of constructive eviction, due to plaintiffs' failure to furnish sufficient heat to render the apartment habitable. The lease was in writing, and was for a term of one year from October 1, 1909. The rent stipulated to be paid was $100 per month, payable in advance on the 1st day of each month. There was no provision in the lease with reference to heating the apartment or maintaining any stated temperature therein. There was a provision in it, however, that the apartment leased was to be occupied as a strictly private dwelling by the defendant and his family, and not otherwise. On the 7th of January, 1910, the defendant, after having made numerous complaints to plaintiffs' agent in charge with regard to the heat supplied, vacated the apartment and surrendered possession of it to the plaintiffs on the ground that the same was not habitable. The trial court, at the conclusion of the evidence, directed a verdict in favor of the plaintiffs for the amount of the rent sought to be recovered, and from the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

[1] The building is six stories in height and contains 30 separate apartments; the one leased by the defendant being located on the sixth floor. There was no way of heating the apartment, except that supplied by the landlords, which consisted of radiators placed in the different rooms, which were connected, in common with all others in the building, by pipes with a steam boiler in the basement. The en-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tire heating plant was under the exclusive control of the landlords, except that the tenants could let the steam into or cut it off from the radiators. There was in one of the rooms in the apartment leased by the defendant a gas log; but this could not, and was not intended to, heat the whole apartment. Under these conditions, notwithstanding the fact that there was no covenant in the lease that the landlords should supply the necessary heat to keep the apartment warm and make the same habitable, he was, nevertheless, obligated to do so. Such a covenant is to be read into the lease. By express provision in the lease the defendant was bound to use the apartment leased only for a private dwelling for himself and family. He could not so occupy it unless artificial heat were furnished in cold weather. If the apartment were not kept warm, or if sufficient heat were not furnished to make it habitable, then the premises were not what had been leased, and the consideration agreed to be paid failed. Artificial heat was just as necessary during the winter months, or some portion of them, as access to and from the apartment. The landlords having made it impossible for heat to be furnished, other than by means under their control, were bound to furnish it, or for their failure a tenant might vacate, and thereafter resist the collection of the rent stipulated to be paid.

[2] Of course, a tenant would not be justified in vacating premises because upon some particular occasion he was deprived of their beneficial enjoyment by an act of omission or commission on the part of the landlord. He would, however, if such act continued or were persisted in for an unreasonable time. In that case there would be a constructive eviction, which has been defined to be an obstruction to the beneficial enjoyment of the premises and a diminution of the consideration of the contract by the act of the landlord. The act or omission of the landlord need not be with intent to compel the tenant to leave the property or to deprive him of its beneficial enjoyment. All that is necessary is that the acts are calculated to and make it necessary for the tenant to move. In speaking of the acts of a landlord which would amount to a constructive eviction, the Court of Appeals, in Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716, said:

"In such a building as the one under consideration, there is very much that remains under the charge and control of the landlord. The heating of the apartments, the supply of water, all sanitary arrangements, and many other things essential to the proper enjoyment of the apartments in the building by the tenants thereof, are regulated and controlled by the landlord, and he owes a duty to the tenant to see that all such matters and appliances are kept in proper order; and if he persistently neglects them, and by reason of such neglect the tenant is deprived of heat or water, or his apartments are filled with gas or foul odors from the same, and the apartments become unfit for occupancy, the tenant is deprived of the beneficial enjoyment thereof, and the consideration for which he agrees to pay rent fails, and there is a constructive eviction."

See, also, Jackson v. Paterno, 128 App. Div. 474, 112 N. Y. Supp. 924.

[3] The defendant and his wife testified, in substance, that in the forenoon of nearly every day during the greater part of December, 1909, and up to January 7, 1910, when they moved out, the apartment

was so cold that they and their children could not keep warm without wearing wraps and overcoats over their ordinary clothing; that for three days in succession during this time, between 9 a. m. and 4:30 p. m., the temperature ranged from 56° to 59° F.; that on one day during the same hours the temperature did not go above 45°; that on twelve mornings during December and January the temperature at 9 a. m. was only 57° or less, and on one morning was as low as 42°; that little or no heat was supplied after 11 o'clock at night, until between 7 and 8 o'clock the next morning. Their family physician testified he was in the apartment several times during those months at about 11 o'clock a. m., and on each occasion the apartment was extremely cold; the temperature ranging between 50° and 60° according to a thermometer he saw in one of the rooms. During this time the defendant made numerous complaints to the agent in charge of the building about the heat, and requested that heat be furnished, and stated he could not continue in the apartment unless more heat were furnished. If the apartment were as cold as testified to by the defendant's witnesses, and the same were due to the act of the landlords, then defendant was justified in vacating, because he was not receiving what the landlords had agreed to give him—an apartment suitable to be occupied as a private dwelling. He could not heat the apartment, because the heating plant was under the exclusive control of the landlords.

There was considerable testimony offered by the plaintiffs to the effect that the heating plant installed in the basement was sufficient to keep the apartment warm; but such testimony did not contradict the testimony of defendant's witnesses to the effect that little or no heat was furnished between 11 o'clock at night and 7 o'clock the next morning. They also offered testimony to the effect that the windows and doors in the apartment were left open, that clothes were put upon the radiators to dry, and that the temperature was due to such causes, and not to the fact that sufficient heat was not furnished. Whether the temperature were, during the time referred to, as testified to by the defendant and his witnesses, and, if so, whether the same were due to the act of the plaintiffs, was, at the conclusion of the trial, a question for the jury. The court could not hold, as matter of law, that the plaintiffs were entitled to recover, because, if the defendant's witnesses were to be believed, then the defendant was justified in vacating the premises and refusing to pay the rent sought to be recovered.

The case of Martens v. Sloane, 132 App. Div. 114, 116 N. Y. Supp. 512, is clearly distinguishable. There, as pointed out in the opinion, it did not appear that the apartment was so arranged that the landlord had control over its heating.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.