# FRIEDMAN BROS. HOLDING COMPANY v. M. S. NATHAN.[1]

April 11, 1924.

No. 23,870.

**When lessee cannot cancel lease because premises are untenantable.**

A lessee who leases premises at a monthly rental, taking them in the condition in which they are and covenanting to make repairs, knowing their condition, with a provision that he may remodel, alter or rebuild if he chooses and make the premises a part of adjoining property which he owns, cannot upon the subsequent condemnation of the property by the city because of its unsafe and dangerous condition which existed and of which he had knowledge when he took the lease, cancel the lease and escape the payment of rent under the statute which provides that the lessee is not liable for rent when the leased property is "destroyed, or is so injured by the elements or any other cause as to be untenantable or unfit for occupancy," nor under a provision in the lease providing for a termination of the lease in a like case unless the premises are restored to their former condition by the lessor.

Action in the district court for Ramsey county to recover $800 for rent. The facts are given at the beginning of the opinion. The case was tried before Boerner, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying its motion for a new trial, plaintiff appealed. Reversed.

*Kerr & Richardson,* for appellant.

*H. J. Charles* and *E. J. Cincera,* for respondent.

DIBELL, J.

Action for rent on a written lease. A verdict was directed for the defendant. The plaintiff appeals from the order denying its motion for a new trial.

The defendant owns a leasehold cornering on Wabasha and Eighth streets in St. Paul used as a theater. In the rear to the east and fronting 34 feet northerly on Eighth street is a property of which the plaintiff has a long time ground lease. On April 13,

[1] Reported in 198 N. W. 460.

1921, the plaintiff executed a lease of this property to the defendant at a monthly rental of $400 per month for the term of 10 years from April 1, 1921. Rent was paid as it accrued until March, 1922. This action is for rent for the months of March and April.

On March 2, 1922, the building on the leased property was condemned by the city authorities, because of its unsafe and dangerous condition, and ordered taken down and removed. The defendant then canceled the lease and removed from the premises. It is conceded that the condemnation was proper. The defense is that the condemnation justified the defendant in leaving the premises, and that he is relieved from further liability upon the lease.

G. S. 1913, § 6810, provides:

"The lessee or occupant of any building which, without fault or neglect on his part, is destroyed, or is so injured by the elements or any other cause as to be untenantable or unfit for occupancy, is not liable thereafter to pay rent to the lessor or owner thereof, unless otherwise expressly provided by written agreement; and the lessee or occupant may thereupon quit and surrender possession of such premises."

The lease contained this provision:

"(d) That said tenant take said premises in the condition in which they are now in, and not otherwise, and that all repairs, alterations or additions which may be necessary for any reason to be made, or which he may elect to make, shall be made at the sole cost and expense of said tenant.

"(e) That in the event of the demised premises being injured or damaged by fire or the elements, or any other cause during the term of this lease (which is not the result of the breach of this lease by said tenant) so as to be untenantable or unfit for occupancy, this lease shall continue in full force and effect if the premises can be restored to their former estate within nine months from the time of the adjustment of claims on account of fire or tornado insurance carried on said premises, or within nine (9) months from the time when said premises became untenantable or unfit for occupancy through any other cause; and if said premises cannot be so restored within said period then this lease shall terminate."

There.was this provision as to alteration or rebuilding.

"(a) That during this term said tenant may, and he is hereby given the right at his own cost and expense to remodel, alter and rebuild said leased premises, or erect a new building thereon so as to fit the same for use for theatre purposes in conjunction with the Starland Theatre, so-called, which lies immediately to the west of said leased premises."

In connection with this provision it was agreed that the lessee would give a bond saving the lessor from liens; that the lessee might use the old materials in altering or rebuilding; that materials not so used should be the property of the lessor; and that the alterations or new building should be the property of the lessor.

The errors assigned are directed chiefly to the exclusion of evidence offered by the plaintiff. If its offered evidence had been received, it would have tended to show that the building was in no worse condition when the property was·condemned than when it was leased; that there was no deterioration in the meantime; that the defendant was aware of its condition when he accepted the lease; that he and the plaintiff both knew that the city authorities were conversant with its condition; that it was in mind that the plaintiff might remodel, alter or rebuild and make the leased premises a part of his theater property as the lease itself provided; and that upon taking the lease the defendant evicted the tenants and made preparations to rebuild and use the property in connection with his theater—a purpose later abandoned.

If the plaintiff's evidence had been received it would have shown the following letter received from one of the city commissioners on April 5, 1921, prior to the execution of the lease:

"April 4, 1921.

"Messrs Friedman and Nathan,
"Gentlemen:

"We send you herewith report on building located in rear of Starland Theatre, 8th and Wabasha Streets, also report of conditions of ceiling over Starland Theatre auditorium.

"In accordance with your suggestion of wrecking this building and providing additional means of egress to the Starland Theatre

by adding to the rear of same covering the property now occupied by the building referred to in the report enclosed, wish to state that the same will meet with the approval of this Department, and will therefore ask that you submit your plans covering this fireproof addition, prepared in such a way as to eliminate the exit now leading under the restaurant building adjoining, and also providing more ample exit on the east side of the auditorium. As you understand, this addition and exit are to be entirely of fireproof construction.

"If you provide this fireproof addition with the exits therein we believe you will greatly increase the efficiency of the building from a standpoint of safety to the patrons of the theatre.

"Yours very truly,

"J. M. CLANCY,

"Commissioner."

The report accompanying the letter is in part as follows:

"The building is highly unsafe and presents a dangerous hazard to life, limb and adjoining property. Its west wall is about six inches out of plumb, having pulled away from the rear wall of the Starland Theater this distance at the top.

"The rear wall is full of dangerous cracks and the inside partitions and floors are in a neglected state of repair. It is not fireproof, in fact it is a dangerous fire-trap. Owing to its west wall being out of plumb, the whole structure, which is four stories high, is in a condition of dangerous, unstable equilibrium, and I am of the opinion that any sudden shock such as a sewer gas explosion would cause its collapse."

Neither the parties nor the city regarded the property as in a proper sense tenantable. It could have been condemned any day. That the condemnation did not come for a year was not due to a deterioration in the interval, but to the indulgence of the city. The defendant knew what he was getting and wanted it. His thought was directed to the enlargement of his theater; hence the provision in the lease, having some of the characteristics of a ground lease, for altering, remodeling or rebuilding.

If the facts are as plaintiff offered to prove them to be, the defendant has no defense. He could not, knowing the premises to be in an unsafe and dangerous condition and untenantable and unfit for occcupancy, lease them, with a provision for altering or rebuilding and adding to his adjoining property, which apparently was what he wanted most, and when the premises were condemned vacate and avoid the lease. He did not have such right either under the statute, or by the term in his lease relative to restoration by the lessor.

No case directly in point is cited. The view which we take is in harmony with Harris v. Corlies, Chapman & Drake, 40 Minn. 106, 41 N. W. 940, 2 L. R. A. 349; Suydam v. Jackson, 54 N. Y. 450, and Meserole v. Hoyt, 161 N. Y. 59, 55 N. E. 274. Useful notes are in 4 A. L. R. 1453-1480, and 13 A. L. R. 818. And upon the general subject see 2 Underhill, Landl. & T. §§796-801; 1 Tiffany, Landl. & T. 1190, et seq; Jones, Landl. & T. §§ 675-681; 16 R. C. L. 967.

In Kafka v. Davidson, 135 Minn. 389, 160 N. W. 1021, it was recognized that the taking of leased property by condemnation for widening a street rendered it untenantable under the statute, justified the lessee in vacating, and that when he vacated he was released by the statute from the payment of rent. That case is without application here. Neither is Weiss v. Zenith Realty Co. 129 Minn. 486, 152 N. W. 869, of particular significance. That case, and the cases cited in it, recognize that the tenant by remaining in possession may waive a right to rely upon the statute relieving him from rent when the premises become untenantable.

The outstanding facts are that the defendant knew just what he was getting; that he knew the premises were in a dangerous condition and ripe for condemnation; that he knew that the city officials at that time characterized the building as "a dangerous hazard to life, limb and adjoining property," and as in "a neglected state of repair," and "a dangerous fire-trap," the whole four-story structure "being in a condition of dangerous, unstable equilibrium," liable to collapse upon "any sudden shock;" that he had in mind tearing down and rebuilding; that to that end there was inserted

a provision giving him the right to alter, remodel or rebuild, so as to use as a part of his adjoining theater; that this provision, which carried with it the right to the use of the ground for 10 years, was an important term of the lease; and that the plan contemplated was abandoned after some preparation to carry it out, and a different plan adopted. The defendant, under the offered proof, got what he wanted and that for which he promised to pay, and in no right sense did the premises become "so injured by the elements or any other cause as to be untenantable or unfit for occupancy," within the language of the statute or similar language of the lease, so as to justify his surrender of the property.

Order reversed.