## KEY v. SWANSON.

No. 15171—Opinion Filed Oct. 6, 1925.

Rehearing Denied Dec. 8, 1925.

(Syllabus.)

**1. Landlord and Tenant—Tenant Subletting Without Consent of Landlord not Entitled to Damages for Constructive Eviction.**

Where a party enters into a contract not to sublet without the consent of the lessor, and thereafter in violation of said contract sublets said premises, such party will not be entitled to recover damages against the lessor in an action on implied warranty against constructive eviction.

**2. Same—Objectionable Business Permitted by Sublessee—Re-entry by Lessee.**

Where one party places another in absolute control and proprietorship of property, reserving only the right to re-enter in case of default in payment for said property, and while the said second party is in the full control, management, and proprietorship, consents to the installation of a certain business which the first party thereafter asserts upon his re-entry amounts to constructive eviction, said first party will not be entitled to recover damages against the

original lessor on account of implied warranty against constructive eviction.

### 3. Same—Constructive Eviction — Necessity for Surrender of Premises.

Where a party remains in actual possession for a long period of time after an alleged constructive eviction, such party is not entitled to recover damages from the landlord upon an action for constructive eviction.

Error from District Court, Okmulgee County: James Hepburn, Judge.

Action by J. B. Key against Lelia D. Swanson. Judgment for defendant, and plaintiff brings error. Reversed.

Stuart, Sharp & Cruce, C. M. Gordon, and Fred M. Carter, for plaintiff in error.

A. L. Emery, for defendant in error.

LESTER, J. The plaintiff in this action filed his petition in the district court of Okmulgee county, Okmulgee, Okla., in which he asked recovery for the sum of $1,875 for rents on account of a building leased to the defendant for a hotel or rooming house. The parties will be referred to as they appeared in the district court.

The defendant filed an answer and cross-petition, in which she alleged that the plaintiff and the defendant had entered into a contract whereby the defendant should occupy the building of the plaintiff at a stipulated rental, and that said contract had been breached by the plaintiff, and that by his acts had rendered a performance of the contract on the part of the defendant impossible, and that on account of the conduct of the plaintiff, defendant asks that she be allowed $18,000 as damages. To the answer and cross-petition of the defendant the plaintiff filed a demurrer, which was by the court overruled, and the plaintiff thereafter filed his reply to the answer and also to the cross-petition of the defendant. The cause was tried to a jury, which rendered a verdict in favor of the defendant in the sum of $10,000. Motion for new trial was filed by the plaintiff, which was by the court overruled. Thereafter a supplemental motion for new trial was filed, which was likewise overruled. The plaintiff prosecutes this appeal to reverse the judgment of the district court.

It appears that the plaintiff, on the 18th day of June, 1918, entered into a lease with Ada Smith and Annie C. Maloney; said lease included the following described property:

"The west one-half of the second and third stories of the three-story building, on the south 100 ft. of lot five (5), block eighty-eight (88), in the city of Okmulgee, Okmulgee county, state of Oklahoma."

That said lease contained the following paragraph:

"Said parties of the second part further agree that they will not sublet said premises, nor any part thereof, without the written consent of the party of the first part; that they will not commit or permit any unlawful business of any kind or nature in said building, and any violation of this covenant shall render this contract null and void, and entitle the party of the first part to immediate possession of the premises herein demised."

It appears that on or about the 10th day of May, 1920, the said lessees, by and with the consent of the lessor, assigned said lease to the defendant in this action, Lelia D. Swanson; said assignment occurring on or about the 10th day of May, 1920. It further appears that on the 15th day of June, 1921, a contract was entered into between Lelia D. Swanson, defendant, and one Alice J. Newman, and that said contract provided:

"Whereas, the said second party is desirous of purchasing the said leasehold estate and personal property from first party.

"Witnesseth: That said first party agrees to sell and convey the said leasehold estate and the said personal property to the said second party in the consideration of the sum of eighteen thousand dollars, and does hereby agree to execute and deliver to the said second party a good and sufficient bill of sale for said personal property and assignment for the said leasehold estate whenever the said sum of money is fully paid according to the tenor and effect of certain promissory notes."

That Alice J. Newman executed a series of notes, the first note due August 15, 1921, and the last note due September 15, 1924. Said agreement between the said Lelia D. Swanson and Alice J. Newman further provided:

"It is further mutually agreed by the parties hereto that possession of the said leasehold estate and personal property shall be delivered on June 15th and 16th at midnight; that if party of the second part makes default in the payment of any of the said promissory notes when the same becomes due and payable, then first party may at her election declare this agreement at an end and shall be entitled to the possession of the said property, and the said second party shall be entitled to the return and the first party shall return the remaining promissory notes in her possession. * * * It is further mutually agreed by the parties hereto that in case of default or breach on the part of the second party, the said sums of money already paid under the terms of this agreement shall be considered by the parties hereto as rent for the use and occupation

of the said leasehold estate and personal property."

This contract between Lelia D. Swanson and Alice J. Newman was not presented to J. B. Key, the lessor, nor was his consent ever obtained to the execution of this contract. It appears that Mrs. Newman made default in her payment to the defendant, Lelia D. Swanson. Mrs. Newman remained in possession of the hotel until about the first of October, 1921.

There was a storeroom on the ground floor of this building which had been let by the plaintiff to some parties who were to conduct a tea room. The parties who conducted the tea room failed in their enterprise and one of the banks at Okmulgee took over the lease and entered into negotiations with a party by the name of Irvin Best, who desired to open a bowling alley in the storeroom formerly occupied by the tea room. The said Irvin Best went to the hotel, which was at that time in possession and control of Alice J. Newman, who had subsequent to June 15, 1921, married one J. R. Davis, and she signed the following instrument.

"September 23rd, 1921. J. B. Key, Okmulgee, Okla. I have no objections to a bowling alley being installed in the room underneath the Pullman Hotel on West 7th street. Okmulgee, Okla. (Signed) Mrs. J. R. Davis."

It appears that the defendant, Mrs. Lelia D. Swanson, again took possession of said hotel in the early part of October, and that the bowling alley, when she again took possession, was then in operation. She afterwards made complaint in reference to the noise and disturbance on account of the operation of the bowling alley. However, she remained in said building; but thereafterward she and the said J. B. Key, plaintiff herein, joined in an action and filed injunction proceedings against said Irvin Best, and on or about the 14th day of December, 1921, the district court of Okmulgee county granted an injunction against said Irvin Best from operating said bowling alley. The defendant claimed that by reason of the noise and disturbance on account of the operation of said bowling alley, her business was entirely destroyed; and that the plaintiff had committed a breach of the covenants in said lease, and that she was thereby evicted from said premises on account of said noise and disturbance.

The plaintiff complains of numerous errors occurring at the trial, but in our opinion the most serious question arises over the construction and effect to be given to the contract entered into between the defendant and Mrs. Davis. It is shown by the record that before Irvin Best commenced the operation of the bowling alley, Mrs. Davis signed a statement to the effect that she had no objection to the installation of the bowling alley underneath the hotel. It therefore becomes necessary to determine the relation that existed between Mrs. Davis and the defendant on account of the written contract made between them.

It will be observed that the lease under which the defendant was holding provided that the lessee could not sublet the same without the written consent of the lessor, who is the plaintiff in this case. The contract between Mrs. Swanson, the defendant, and Mrs. Davis, provides in part as follows:

"It is further mutually agreed by the parties hereto that possession of the said leasehold estate and personal property shall be delivered on June 15th and 16th at midnight; that if party of the second part makes default in the payment of any of the said promissory notes when the same becomes due and payable, then first party may at her election declare this agreement at an end and she shall be entitled to the possession of the said property, and the said second party shall be entitled to the return and the first party shall return the remaining promissory notes in her possession.

"It is further mutually agreed that the party of the second part shall pay the taxes and assessments which may be levied against the said property which are now due—including the last half of the taxes for the year 1920—and which may become due during the life of this contract. If default be made in the payment of the said taxes and assessments, then first party shall be entitled to the possession of the said property as provided in last above paragraph.

"It is further mutually agreed by the parties hereto that in case of default or breach on the part of the second party, the said sum of money already paid under the terms of this agreement shall be considered by the parties hereto as rent for the use and occupation of the said leasehold estate and personal property."

It is urged by the plaintiff that the contract between the defendant and Mrs. Davis constituted a subletting on the part of the defendant, and the defendant having breached her contract, she was not thereafter entitled to recover damages on account of an implied warranty of quiet enjoyment of the premises.

The case of Davis v. Vidal, 151 S. W. 290, by the Supreme Court of Texas, defines the distinction between an assignment of a lease and the subletting of a lease as follows:

"1. The lessor may recover the rent due

from an assignee of the lessee, but not from a subtenant, since in the first case there is privity of estate and contract, while in the latter case there is neither."

"2. An instrument executed by a lessee whereby he conveys the entire term and parts with all reversionary estate in the premises is an assignment, but where there remains to him a reversionary interest, the instrument is a sublease."

"3. The word 'term,' in the rule that a tenant who parts with the entire term in his lease is an assignor and the instrument is an assignment, means something more than the mere time for which the lease is given, and the instrument must convey, not only the entire time for which the lease runs, but the entire estate conveyed by the lease."

"4. An instrument whereby a lessee for a fixed term 'sublets, assigns and transfers' the premises to a third person, subject to a contingent reversionary interest in the estate on the failure of the third person to pay rent, and whereby the lessee reserves the right to pay the rent to the lessor, thereby reserving the right to forestall the lessor on the failure of the third person to pay the rent, from exercising the right to re-enter, is a subletting and not an assignment; an assignment being properly a transfer or making over to another of a right one has in any estate."

We are of the opinion that, where a party has a reversionary interest, such as the defendant had and held in the contract with Mrs. Davis, the same constituted a subletting, and the defendant having breached the plain terms of the lease with the plaintiff, she could not recover. It is also contended with some degree of merit that if the contract between the defendant and Mrs. Davis should be construed as an absolute assignment of the lease, from the defendant to Mrs. Davis, then in that event it would preclude the defendant from recovering from the plaintiff, for the reason that the defendant having made an assignment of her interest and being out of the possession of the premises at the time the bowling alley was installed, Mrs. Davis was the only rightful person at that time who could give consent to the installation of the bowling alley; that if there was a reassignment to the defendant, the defendant then went into possession of the hotel with full notice of the operation of the bowling alley, and that from the plaintiff's viewpoint it would be immaterial under such circumstances whether the contract between the defendant and Mrs. Davis was one of subletting or constituted an assignment. And while we are construing the contract between the defendant and Mrs. Davis as one of

subletting, it may be further observed that it was the defendant who placed Mrs. Davis in complete and absolute charge of the leasehold, and that while having full and complete charge of said leasehold she executed an instrument giving her consent to the installation of the bowling alley, and that at the time the consent of Mrs. Davis was obtained to install the said bowling alley the defendant did not in any manner have any control or management of the hotel. On the other hand, Mrs. Davis had become the full proprietor of the same under her contract with the defendant. It may have been unfortunate for the defendant that she made and entered into the contract with Mrs. Davis, but we are unable to justify the recovery of the defendant on account of the operation of the bowling alley, when its installation and operation was fully consented to by the party that was in complete control of the hotel under and by virtue of a contract made and entered into with the defendant.

It is again urged by the plaintiff that the defendant could not remain in possession of the hotel and then recover damages for constructive eviction. It appears that the bowling alley was closed during the middle of December, 1921, and that the defendant thereafter continued in possession of the hotel until the 17th day of March, 1922.

The doctrine of constructive eviction is defined in 16 R. C. L., section 172, page 686, as follows:

"There can be no eviction if the tenant continues in possession of the leasehold, however much he may be disturbed in the beneficial enjoyment. It must amount to a deprivation of possession. The possession must be given up by the tenant in consequence of the acts of the landlord, and the acts must be such as to warrant and justify the tenant in doing so."

Also in the case of Veysey v. Moriyama (Cal.) 195 Pac. 662, it is said:

"The general rule, however, relating to a constructive eviction is that any disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupancy in whole or in substantial part for the purposes for which they were leased amounts to a constructive eviction, if the tenant so elects and surrenders his possession. 6 R. C. L. p. 686. There can be no constructive eviction if the tenant continue in the possession of the whole, however much he may be disturbed in the beneficial enjoyment. 16 R. C. L. pp. 686, 687; Keating v. Springer, 146 Ill. 481, 34 N. E. 805, 22 L. R. A. 544,

37 Am. St. Rep. 175; De Witt ᵥv. Pierson, 112 Mass. 8, 17 Am. Rep. 58; Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170. For instance. the failure of the landlord to heat a leased building as agreed under the lease may constitute an eviction, but the tenant must abandon the possession. He cannot remain in possession and enjoy without paying the rent such supply of heat as is furnished, although so inadequate as to have warranted an abandonment of the lease had the tenant so elected. 16 R. C. L. p. 692; note 37 L. R. A. (N. S.) 1218; Minneapolis Co-op. Co. v. Williamson, 51 Minn. 53, 52 N. W. 986, 38 Am. St. Rep. 473; Berlinger v. Macdonald, 149 App. Div. 5, 133 N. Y. Supp. 522; Koehler v. Scheider (Com. Pl.) 4 N. Y. Supp. 611; Siebold v. Heyman (Sup.) 120 N. Y. Supp. 105."

In our judgment a person cannot long remain in the possession of property after an alleged constructive eviction and then recover damages therefor.

The plaintiff also contends that the court's instruction No. 5½ was erroneous; said instruction being as follows:

"You are instructed as a matter of law that the contract between defendant and Mrs. Davis, admitted in evidence, was not a breach of the lease between defendant and plaintiff."

As we have in another portion of this opinion determined that the contract between the defendant and Mrs. Davis constituted a contract of subletting, and the lease under which the defendant was holding stipulated that there should not be a subletting on the part of the lessee without the written consent of the lessor, then such subletting on the part of the defendant was contrary to the terms of said lease, and therefore constituted a breach of contract between the plaintiff and defendant; and said instruction was, of course. erroneous and prejudicial.

Under our view of the law as herein expressed, the trial court should have instructed the jury to return a verdict in favor of the plaintiff for the amount due plaintiff for rent.

The judgment of the district court is reversed, with directions to proceed with said cause not inconsistently with the views herein expressed.

NICHOLSON, C. J., BRANSON. V J. and PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 36 C. J. p. 81, § 701. (2) 35 C. J. p. 275, § 1010. (3) 36 C. J. pp. 263, 264, § 990; annc. 4 A. L. R. 1464; 20 A. L. R. 1370; 16 R. C. L. p. 687; 3 R. C. L. Supp. p. 593; 4 R. C. L. Supp. p. 1073.