# FRIEDMAN BROS. HOLDING COMPANY v. M. S. NATHAN.[1]

November 20, 1925.

No. 24,883.

**Law of the case.**

1. Decision on a former appeal, determining the effect of evidence erroneously excluded on the first trial, but now in the record and uncontroverted, is the law of the case.

**When election to take lease may be withdrawn.**

2. If one holding an option for a lease is thereby promised a tenantable property and, supposing the property to be tenantable, exercises the option and thereafter and before the execution of the lease discovers that it is actually untenantable, he may withdraw his election and refuse to accept the lease.

**When tenant cannot terminate lease because property is untenantable.**

3. If, in such a case, knowing the property to be untenantable and subject to condemnation and destruction by public authority, he takes a lease of the property in its then condition "and not otherwise," the lessee cannot terminate the lease and escape further liability for rent simply because the condition of the building is aggravated by a subsequent and extraneous cause.

1. See Appeal and Error, 4 C. J. p. 1110, § 3091.
2. See Landlord and Tenant, 35 C. J. p. 1192, § 501 (Anno).
3. See Landlord and Tenant, 36 C. J. p. 322, § 1124.

————

3. See note in 37 A. L. R. 1170.

After the former appeal reported in 159 Minn. 101, 198 N. W. 460, the case was tried before J. B. Sanborn, J., who directed a verdict in favor of plaintiff. Defendant appealed from an order denying his motion for a new trial. Affirmed.

*H. J. Charles,* for appellant.

*Kerr & Mohan,* for respondent.

[1]Reported in 205 N. W. 945.

STONE, J.

Action for rent wherein defendant appeals from an order denying his motion for a new trial after a directed verdict for plaintiff. There have been two trials. Upon the first a verdict was directed for defendant and plaintiff's motion for a new trial was denied. Upon appeal, there was a reversal, the decision being reported in 159 Minn. 101, 198 N. W. 460, 37 A. L. R. 1166. The story of the case, exclusive of the second trial and its result, is told there at sufficient length. We then held that the exclusion of certain evidence offered by plaintiff was error. That evidence is set forth at length in the opinion. On the second trial it was received and resulted in the direction of a verdict for plaintiff.

We held upon the record then before us, plus an assumption of the truth of the excluded evidence, that defendant as lessee could not "cancel the lease and escape the payment of rent under the statute which provides that the lessee is not liable for rent when the leased property 'is destroyed, or is so injured by the elements or any other cause as to be untenantable or unfit for occupancy' nor under a provision in the lease providing for a termination of the lease in a like case unless the premises are restored to their former condition by the lessor."

Plaintiff's present case is the same as on the first trial, except that it is now aided by the evidence which was then excluded. All of the latter is in the record and uncontroverted, except for an alleged change in the building (to be discussed later), and a resulting additional deterioration thereof occurring between the date of plaintiff's lease and his attempt to escape liability thereunder by reason of the condemnation and consequent destruction of the building.

The former opinion establishes the law of the case. It held distinctly that if the building, when the lease was made, was in the condition which plaintiff offered to prove (and which it has now proved conclusively), and in consequence subject to immediate condemnation by the city authorities, and defendant bound himself by the lease having knowledge of that fact, as clearly he did, he cannot

escape liability.   So, if the record is not substantially changed other-
wise, plaintiff was entitled to the directed verdict.

The argument for defendant in opposition is predicated, first,
upon a fact now in evidence which was not considered in the first
decision.   Defendant made his lease April 13, 1921, pursuant to an
option from the Pfiefer Realty Company, a former owner of the
building.   That option, as a contract, did not require defendant to
lease an untenantable building.   Some of the terms of the prospec-
tive lease are fixed by the option.   For others reference is made to
another lease, then held by the optionee on the adjoining theater
property.   One of the terms was that the lease, if any, to be taken
under the option, would "provide that said lessee should have the
right to remodel, alter and rebuild said building   *   *   *   suitable
for his own use."

We assume, as we are asked to assume by counsel for defendant,
that when he gave notice on February 25, 1921, of his intention to
exercise that option, he did not have any knowledge of the then
untenantable condition of the building, and did not know that even
then it was subject to immediate condemnation and destruction
by public authority.   He did procure that knowledge, in the un-
deniable and convincing form indicated by Mr. Justice Dibell in
stating the reasons for our first decision, before he bound himself
by the lease.   Notwithstanding that knowledge, he executed the
lease.

Certainly, if one holding an option for a lease is thereby promised
a tenantable property, he is entitled to such a property.   We assume
defendant's option to have had that effect.   If in such a case the
optionee, supposing the property to be tenantable, elects to exercise
the option and thereafter and before the execution of the lease dis-
covers that the property is actually untenantable, he need not accept
the lease.   That is, if he so elects, he is excused from further per-
formance and may withdraw or reverse his first election.   But if,
with such knowledge, he leases the property in its then known con-
dition, "and not otherwise," he cannot complain thereafter because
alone of the untenantable condition existing, to his knowledge, when

he made his final election. That is this case, and so upon his own theory defendant's February notice did not obligate him to take the April lease, for in the meantime he discovered a condition which entitled him to withdraw his election so to do.

On the second trial there was new evidence that the condition of the building was made worse by a gas explosion occurring on nearby premises sometime after the execution of the lease and before defendant had attempted to cancel. We have examined that evidence and the most that can be said for it is that it tends to prove only an aggravation of the old condition and not a new or original cause rendering the building untenantable or subject to condemnation. That is not enough for, under the circumstances of this case, giving to this new and subsequent cause all of the effect the evidence indicates it should have, it can be characterized properly only as an aggravation of the known condition existing when the lease was made. Therefore, this new evidence did not help defendant's case.

It is again contended that defendant is not liable because the lease required plaintiff to restore the building, "if injured or damaged by fire or the elements or any other cause." When the case was here before, we held upon full consideration—in fact the opinion concluded with the statement to that effect—that defendant, under the proof offered by plaintiff, excluded at the first trial but now in the record and uncontroverted, "got what he wanted and that for which he promised to pay, and in no right sense did the premises become 'so injured by the elements or any other cause as to be untenantable or unfit for occupancy' within the * * * language of the lease so as to justify" defendant's surrender of the property. That is the law of the case and decisive of the point, but we have re-examined the argument contra.

If the quoted clause, upon which defendant relies so much, stood alone, unqualified by other and equally controlling provisions of the contract, the argument now based thereon would be more persuasive. The trouble is that there is a *particular* provision which has undeniable application to the special condition of untenantability under consideration. It must be held to prevent any application to that

particular condition of the more *general* term of the lease concerning untenantability resulting from fire, the elements "or any other cause."

The latter provision must be taken here as applying, in the main, to the result of subsequent and extraneous forces. Because of the other term, *particularly* and *specifically* obligating defendant to take the building in its *then* condition "and not otherwise," we can only reaffirm the conclusion reached when the case was first here that plaintiff, as lessor, was under no obligation to make good the then known dilapidated condition of the building. The lease expressly released plaintiff from any and all obligations of that kind. The early destruction was the result of the very condition with respect to which the parties so contracted with particularity. It was not caused by any subsequent or extraneous event. To hold otherwise would relieve defendant of the assumption of full responsibility for the then condition of the building and of its obviously anticipated effect and deprive that much of the contract of effect.

We are mindful that our holding may seem to cut down somewhat the natural import of the general phraseology used in requiring plaintiff, as lessor, to repair the building in case of damage by fire, the elements "or any other cause." That result is inescapable because, for the reasons indicated, it is clear that the other and more particular provision was intended to and did except from the operation of the more general language a damage or destruction due to the known condition existing at the date of the lease. In no other way can we give to the whole contract that interpretation which is required by elementary rules of construction. In no other way can we give reasonable and just effect to both of two important provisions found therein. The result is that defendant is liable as a matter of law and that there was no question of fact to be submitted to a jury.

Order affirmed.