ABRAHAM A. VAN WORMER v. WILLARD CRANE ET AL.

*Covenant to keep in repair—Damages by the elements.*

"Damages by the elements," which are ordinarily excepted from a lessee's covenant to keep in repair, cover destruction by fire occurring without fault or negligence in the lessee.

Error to Muskegon. (Russell, J.) June 22.—Oct. 3.

ASSUMPSIT. Plaintiff brings error. Affirmed.

*McLaughlin, Delano & Bunker* for appellant. If a lessee covenants to repair and keep the premises in repair during the term, and redeliver without reservation in his covenant, he is bound to rebuild them if burnt down by accident, negligence or otherwise: Wood's L. & T. 599 § 373; *Bullock v. Dommitt* 6 Term 650; *Earl of Chesterfield v. Duke of Bolton* Comyn 627; *Beach v. Crain* 2 N. Y. 86; *Phillips v. Stevens* 16 Mass. 238; *Pym v. Blackburn* 3 Ves. Jr. 34; *Monk v. Cooper* 2 Strange 763; *Hallett v. Wylie* 3 Johns. 44; *Fowler v. Bott* 6 Mass. 62; *McIntosh v. Lown* 49 Barb. 550; Chitty on Contracts (11th Am. ed.) 468; *Leavitt v. Fletcher* 10 Allen 119; and "make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident or the act of a stranger:" *Tilden v. Tilden* 13 Gray 103; *Ely v. Ely* 80 Ill. 532; *Hoy v. Holt* 91 Penn. St. 88: 36 Am. Rep. 659; *Linn v. Ross* 10 Ohio 412; *Forward v. Pittard* 1 Term 27; *Polack v. Pioche* 35 Cal. 416; *Kling v. Dress* 5 Rob. (N. Y.) 521; accidental fire is not included in the meaning of the term "Act of God:" Story on Bailments §§ 25, 489, 507, 511, 528; *Forward v. Pittard* 1 Term 33; 2 Pars. on Cont. (5th ed.) 159, 161; *Miller v. Steam Nav. Co.* 10 N. Y. 431; *Merchants' Despatch Trans. Co. v. Kahn* 76 Ill. 520; *Hyde v. Navigation Co. etc.* 5 Term 389; Angell on Carriers § 156; *Moore v. Mich. Cent. R. R. Co.* 3 Mich. 23; *McHenry v. Railroad Co.* 4 Harr. (Del.) 448; Edwards on Bailments § 543; *Merchants' Despatch Co. v. Smith* 76 Ill. 542; Hutchinson on Carriers §§ 182, 184; *Chamberlain v. Western Trans. Co.* 44 N. Y. 305; *Gilmore v. Carman* 40 Am. Dec. 96; *Friend v. Woods* 6 Gratt. (Va.) 189.

*Keating & Dickerman* for appellees.

COOLEY, J. Action of covenant broken. The covenant was contained in a lease of land upon which was a planing-mill and box factory, and by it the lessees undertook "that they will, at their own expense, during the continuance of the lease, keep the said premises and every part thereof in as good repair, and at the expiration of the term

yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damages by the elements excepted." The breach assigned was that the planing-mill, etc., was "wholly destroyed or consumed by fire, which said fire was not caused by the elements," and that defendants neglect and refuse to rebuild.

On the trial when the lease was offered in evidence the defendants objected that the destruction of the buildings by fire and the failure to rebuild constituted no breach of the covenant set out; and the circuit judge so ruled. This ruling necessitated a judgment for the defendants, which the plaintiff brings to this Court by writ of error.

The plaintiff relies upon a line of cases in which it has been held that if one covenants unconditionally to repair, or to surrender the premises in good repair, he is liable for the destruction of buildings not rebuilt by him, though it may have occurred by fire or other accident. *Paradine v. Jane* Aleyn 26; *Chesterfield v. Bolton* Com. 627; *Walton v. Waterhouse* 2 Saund. 422a, note; *Bullock v. Dommitt* 6 Term 650; *Phillips v. Stevens* 16 Mass. 238; *Tilden v. Tilden* 13 Gray 103; *Beach v. Crain* 2 N. Y. 86; *Ross v. Overton* 3 Call 309; s. c. 2 Am. Dec. 552; *Ely v. Ely* 80 Ill. 532; *Hoy v. Holt* 91 Penn. St. 88: s. c. 36 Am. Rep. 659. But this is not a case of a covenant unconditionally to repair, for the lessees have taken care to make an excep. tion which was probably supposed to be important. And the question now is whether the injury which has occurred is an injury within the intent of the exception.

"Damages by the elements" must be conceded to be a somewhat uncertain expression. Strictly speaking, the elements are the ultimate, undecomposable parts which unite to form anything; as the gases which form air and water are the elements respectively of those substances. But the term is used in many other senses, and the definitions of lexicographers would be of little service to us in this case.

Anciently it was supposed there were four elements of material things—earth, air, fire and water; and when it came to be known that this classification had no scientific

basis, the term had found a place in common speech which it still retains.   Injuries to buildings by wind, rain, frosts and heat are spoken of as injuries by the elements, and all the ordinary decay from natural causes is classed in the same category.   Probably no one would make any question respecting this.

The injury in this case was caused by fire.   No fault in connection with it is charged upon the defendants, and it seems to be taken for granted on both sides that the fire was accidental.   We may therefore assume that the fire was one which occurred without traceable fault, and that it is to be classed as a calamity for which no one is responsible except as he may have expressly undertaken to be so.

If a flood had destroyed this building the defendants would not be held responsible, because it would have been said the damage is of a sort that must be referred to the elements within the understanding of the parties in entering into this covenant.   If a tornado had destroyed it, the same would have been said.   We cannot suppose the parties intended to except natural and ordinary decay from wind and rain, and not the more sudden and grievous calamities proceeding from the same sources.   The general expression "damages by the elements" will cover all such injuries if it will cover any of them.   But an injury by fire is as much an injury by the elements as an injury by wind or flood, and we should be at a loss for any ground on which to distinguish it under this covenant.

We have no doubt the parties intended by this exception to include all damages resulting from fire, as much as those attributable to air or water, unless traceable to the agency of man.   The purpose was to excuse the lessees in cases where the damages from the causes mentioned had happened without their fault, and a popular phrase was made use of to express this intent, instead of specifying the particular injuries which were in mind.   In the popular acceptation of the phrase, injuries by the elements are such injuries as result from the operation of the most common destructive

forces of nature against which buildings need to be protected; and of these fire is the chief.

This being our conclusion, the judgment must be held correct, and it will be affirmed with costs.

GRAVES, C. J. and CAMPBELL, J. concurred.

SHERWOOD, J. (concurring).    In this case the plaintiff relies entirely upon the construction of the covenant to repair contained in the lease, for recovery.    The covenant is as follows:

" That parties of the second part will, at their own expense, during the continuance of this lease, keep the said premises, and every part thereof, in as good repair, and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damages by the elements excepted."

If the plaintiff's declaration states a cause of action, it is difficult to see why the testimony received against the objection of defendants' counsel was not relevant and material.    The question whether the declaration is sufficient or not, should have been raised by demurrer; but as the case is presented we must consider it on the exceptions taken.    This practice, however, as has been frequently observed, is not to be commended, and should be abandoned. Counsel have endeavored to apply to the case the distinction made by the authorities between the liability of an assignee and the sub-lessee of a term, in order to determine who is entitled to the damages claimed, if any are recovered in the case, thereby insisting that Van Wormer is not the proper party plaintiff.    We do not deem it necessary to discuss that subject.    It is sufficient to say upon this point that the testimony offered shows that defendants, if liable at all to the plaintiff, are so liable as his lessees.

The only question, therefore, is, what is the defendants' liability under the covenant to repair, above recited, contained in the lease; what was the scope of the obligation assumed?    Did it extend to buildings accidentally destroyed

by fire, without fault or neglect of the tenants? And in such case did it require them to rebuild?

Under the civil law, the landlord was bound to repair or rebuild in case of injury or of destruction of buildings by unavoidable calamity, as tempests, fire or enemies (4 Kent's Com. 110), and the tenant was not liable.

Independent of any contract or express agreement, at common law a tenant for years must treat the premises in such a manner that no substantial injury shall be done them through any negligent or willful misconduct on his part, and must make fair and tenantable repairs; such as putting fences and buildings in order, by putting up or relaying the one when necessary, and replacing doors or windows broken in the other during his occupation or term; but he is never bound to rebuild the premises which have become ruinous or accidentally destroyed by fire; neither is he liable for mere wear and tear of the premises, nor bound to replace any portion thereof worn out by time. 4 Kent's Com. 110 note d; *Auworth v. Johnson* 5 C. & P. 239: 3 Bl. Com. 228; 2 Cooley's Bl. 515; *Leach v. Thomas* 7 C. & P. 327; *Cheetham v. Hampson* 4 Term 318; *Stanley v. Agnew* 12 M. & W. 827; *Thomson v. Amey* 12 Ad. & El. 476; Tayl. Landl. & T. 234; Wood's Landl. & Ten. 582.

The bare relation of landlord and tenant is a sufficient consideration for an implied promise to treat the premises occupied by him in a good and proper manner, according to the custom of the country or place in which they are located, and to make the ordinary repairs thereto, not new or permanent, of course, but such as will keep them from going to decay and dilapidation, and which reasonable care will dictate (Tayl. Landl. & Ten. 235; *Brown v. Crump* 1 Mar. 567: 6 Taunt. 300; *Powley v. Walker* 5 Term 373); and the general covenant to repair extends no further. *Mantz v. Goring* 4 Bing. N. C. 451; Tayl. Landl. & Ten 247; Wood's Landl. & Ten. 591; *Gutteridge v. Munyard* [7 C. & P. 129] 1 Moody & Rob. 334.

If the landlord wishes to impose upon the tenant the duty of making repairs beyond these he can only do so by

express covenant in his lease to that effect. The tenant may bind himself to any extent he pleases by express covenants in his lease. *Beach v. Crain* 2 N. Y. 86; *Digby v. Atkinson* 4; Camp. 275; *Cline v. Black*, 4 McCord 431. And it is insisted in this case that the defendants covenanted to the extent claimed by the plaintiff, and that they were liable to rebuild or pay the amount required for that purpose.

In construing the covenants contained in a lease the cardinal rule is that the intention of the parties shall govern; and the courts will not extend or enlarge the obligation of the lessee beyond the plain meaning of the language used and the intention existing at the time it was made; and if there is not an express stipulation to the effect to restore buildings and other property leased, destroyed by casualties from fire or water, without fault or neglect on the part of the tenant, the loss must fall upon the landlord or reversioner. *Phillips v. Stevens* 16 Mass. 238; Wood's Landl. & Ten. 602.

The general obligation of the lessee to repair and his covenants to do so are not to be enlarged beyond their fair intent, and the tenant should not be held responsible for any damages in case of injury or destruction not anticipated, contemplated or intended when the lease was made, and the usual and commonly accepted meaning of the words used in the ordinary transactions of life should be given to the language used in the covenant.

Applying these rules of construction to the covenant contained in this lease, what does the word "elements" mean as there used? What did the parties understand it to mean when they placed it in the lease? It is claimed by the plaintiff's counsel that it does not include accidental fire or a burning by fire connected with any human agency, but burning caused by lightning or arising from some action of the elements alone; that the legal signification of the word as used in this lease is synonymous with the phrase "act of God;" that the word "elements," as here used, means earth, air, fire and water; but to enable the defendants to claim the benefit of the exception contained in the covenant to repair, such injury must result from the action of the ele-

51 MICH.—24

ments entirely; that the lightning must kindle the fire; the earth must be convulsed; the air must blow in tempest or tornado; the water must come in water-spouts, or from sudden irruption of the sea breaking by its own force over the barriers.

We are not able to agree with the learned counsel in this construction. It is contrary to the rule laid down by this court in *Harlow v. Lake Superior Iron Co.* 36 Mich. 105. It was there well stated by Mr. Justice Marston in construing the lease in that case, that "it would not only be unjust, but contrary to the well-settled rules of construction, to dispose of this case upon any narrow or technical view, based upon any particular word or clause in the lease."

In this case a large and valuable portion of the property rented consisted of a building containing a large amount of machinery, and, when used, large amounts of combustible material of various kinds were constantly accumulating, thereby greatly increasing the risk and chances of destruction by accidental fires. In all probability the danger of destruction from such fire would be a hundred and perhaps a thousand times greater than from fire by lightning, and still we are asked to believe that the defendants, when they made this lease, were willing to assume the greater risk, and were content to be exempt from damages only by lightning. We cannot accept this view as either reasonable or proper.

It is true, the defendants might have thus covenanted had they chosen to do so; and had they done so in unmistakable language, however unreasonable it might appear to us, it would be our duty to uphold the contract as the parties made it, so long as it contained no unlawful promise. But that the ordinary meaning of the word "elements" used here was intended by the parties is too clear to admit of any other construction. Fire is one of the elements, and of all the most dangerous, and whether it comes from spontaneous combustion, from the crater of the volcano, or from the clouds, it is still the same element, recognized as such in all the English lexicons, and we can see no reason

for giving the word a different or more limited meaning in legal instruments; and we have no doubt but that accidental fire, without fault or neglect of defendants, was intended by the parties to be included in the clause containing the exception.

Counsel have called our attention to the case of *Polack v. Pioche* 35 Cal. 416, where the exception contained in a covenant to repair was similar to the one in this case. In that case " damages by the elements or acts of Providence " were excepted. There, an embankment of a natural reservoir which had been raised by the people in the vicinity was filled with water by unusual rains, and the bank was broken by a stranger, and by reason thereof the water flowed over sundry premises to and upon those demised to the defendant, and did a large amount of damage. The tenant refused to repair, and the landlord brought suit and was allowed to recover six thousand dollars. In that case the court holds: "Damages by the acts of God, and damages by the action of the elements, are convertible expressions in the law of leases," meaning the same thing.

I have examined the case carefully and I am not satisfied with the construction given to the exception there under consideration, or with the reasoning relied upon to support the rule adopted by the court. Mr. Justice Sanderson, in delivering the opinion of the court, said : " The elements are the means by which God acts, and we are unable to perceive why damages by the elements and damages by the acts of God are not convertible expressions." It is true God uses all the elements in his own way, and while so using them, if damages ensue thereby to the premises of the plaintiff, it is conceded such damages would fall within the exception and the tenant would not be liable. Now, why is this? Because the injurious act was one over which the tenant had no control and could not prevent. God not only himself uses these elements, but also permits man to use them in the most ordinary affairs of life. In fact, their use by man in the economy of the Great Creator is made an absolute necessity in preserving human existence. The

dangerous character of some of the elements renders it. necessary in their use to observe great care and caution, and when, in any given case, such care has been exercised and the demised property has been destroyed by fire, the damage is by the element, and although human agency may have been used in some remote manner in producing the fire which finally caused the injury, it is, no less, damage by the elements; and if the tenant had no knowledge of, or control over, the agency or physical cause producing the fire, it is difficult to see why he should be liable in the one case any more than in the other; or why such case is not within the exception contained in the covenant as well as the other.

In *Polack v. Pioche*, as the case is stated, had not the embankment creating the reservoir been injured through some human agency, the defendant's case would have fallen within the exception. The defendant in that case, however, had no more control or power over the human agency setting the destructive element in motion than he would have had over the operations of nature producing the same result. Then why should the tenant be held liable in the one case more than in the other? He is without fault in both cases. The reason for his non-liability is as strong in the one case as in the other, and I think the rule should be the same. I think injury to the demised premises, without fault or neglect of the tenant, by fire purely accidental or unknown as to cause, should fall within the exception contained in the covenant in this case.

The covenant is in general use in this State, and has been for many years, and I think injuries accruing to demised property, under the circumstances contained in this record, are understood by business men, conveyancers and the profession generally, to be within the exception. A contrary holding would be a great surprise to our people, and in many cases might deprive parties, not only of a competency, but of a fortune, when it was not their intention in making their lease even to place their property in jeopardy.

It is certainly our duty in our holding to avoid any such

result, unless clearly authorized by the contract of the parties. The liability of the tenant for personal property, leased in the manner this was, I do not think is that of a common carrier. These tenants were not insurers of this property, but bailees for hire, and could only be held to ordinary care and prudence. There may be some question whether the personal property would be included in the covenant to repair. It is not, however, necessary in this case to decide that point now.

The judgment of the circuit court must be affirmed with costs.

CAMPBELL, J. concurred.