Downey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This case was referred to the Court of Claims by the Secretary of the Navy under the provisions of section 148 of the Judicial Code, which provides that where a claim is referred by the head of an executive department and it appears from the facts established that the court has jurisdiction to render judgment it shall proceed to do so. It therefore becomes the duty of the court to hear and deter *455 mine the questions involved. White Earth Indians Case, 50 C. Cls., 19.
The plaintiff, Gen. Anson Mills, filed his petition setting forth his claims. A large amount of testimony has been adduced by both parties. Except as hereafter stated, any right of recovery by the plaintiff must be found in the contract between the parties whereby he leased to the United States for a period of 10 years certain premises in the city of Washington, known as the Mills Building, by contract dated September 24, 1902. When the contract was executed the building was in the course of construction. Full possession was taken on April 1,1903, and rents began at that time, though by agreement prior thereto the plaintiff had conceded that certain offices be occupied by the Marine Corps.
When a lease is made there is no implied covenant that the landlord shall make repairs. Sheets v. Selden, I Wall., 416, 423. In that case it was said:
“ The tendency of modern decisions is not to imply covenants which might and ought to have been expressed if intended. A covenant is never implied that the lessor will make any repairs. The tenant can not make repairs at the expense of the landlord, unless by special agreement.”
Nor is there an implied covenant that the premises shall be fit for the purposes for which they are leased. These principles arise out of the consideration that the tenant by the indenture of lease for a period of years becomes for the term the owner of the leased premises. Viterbo v. Friedlander, 120 U. S., 707, 712. On the other hand, there is an implied obligation on the part of the tenant, in the absence of express covenants, neither to commit waste nor by his failure to exercise reasonable, care to permit it. Bostwick’s Case, 94 U. S., 53, 68. The obligation which thus, in the absence of an express covenant, is imposed upon the tenant is not one to repair generally, but is that the property shall be so used as to make repairs unnecessary as far as possible. “It is in effect a covenant against voluntary waste and nothing more. It has never been so construed as to make a tenant answerable for accidental damages, or to bind him to rebuild.” Bostwick’s Case, supra.
*456 In the present case there are express covenants by both the lessor and the lessees, as follows:
“The lessee will pay all running charges, save annual property tax, which alone is to be paid by the lessor, and it will not use said premises nor any part thereof tor any unlawful or dangerous purpose, but will occupy the same only for general office purposes; will at its owm expense repair all damage to the plumbing, such as the stoppage of drainpipes, bursting of pipes by freezing, and other damage to the plumbing resulting from careless use, and make all repairs to said premises- other than the roof, which is guaranteed by the contractor, and will, at the expiration of its tenancy deliver up the premises to the lessor in the like good order they may be in at occupation, ordinary wear and tear and damage by fire or other elements excepted; provided, however, that in case the said premises shall at any time during the term of this lease be injured by fire or other elements the said lessor shall forthwith proceed to put the same in as good condition as the said premises were in before such injury. If said premises shall be wholly destroyed the lease shall terminate; but if partially destroyed, then during the time repairs are being made only such proportion of the rent herein provided for shall be paid as the part of the premises occupied shall bear to the entire building; provided, however, that if such partial destruction shall have been caused by negligence on the part of the lessee, full rent shall be paid during the progress of repairs, if such repairs shall be prosecuted with the utmost practicable diligence and shall be completed within the period of two months.”
Having expressed their covenants in writing, it is to be presumed that all which the parties severally agreed to do is to be found in their contract. The question we must determine is whether the lessees have violated any of the covenants on their part, because the action here takes the form of a claim against the Government on account of the several items involved in the claim.
It may be stated at the outset that the common-law rule which required a tenant to rebuild in case of destruction where he had covenanted to keep the premises in repair and deliver them up at the termination of the lease in like good order and repair as at. the beginning of the term (Tiffany Landl. & Ten., sec. 116; Dermott v. Jones, 2 Wall., 1, 8) can find no application under the lease in question, because there *457 is an express provision tliat in case of total destruction of the premises the lease shall terminate, and in case of partial destruction the lessor undertakes to repair. In case of partial destruction the rent is apportioned during the period of restoration, except that if the partial destruction is caused by the lessees’ negligence full rent is to be paid during the progress of repairs. These provisions are manifestly inconsistent with any purpose to require the lessees to rebuild. These obligations assumed by the lessor must be considered in connection with the lessees’ covenant “to make all repairs.” Their covenant that they will at their own expense repair all damage to the plumbing resulting from designated causes “ and make all repairs to said premises other than the roof ” is followed immediately by the covenant to deliver up the premises at the end of the term in like good order that they may be in at occupation, “ ordinary wear and tear and damage by fire or other elements excepted.” Whatever condition resulted from ordinary wear and tear or from fire or other elements is thus removed from the operation of the lessees’ covenant to deliver up. Or stated differently, the covenant to make all repairs did not obligate the lessees to provide against conditions produced by ordinary wear and tear or fire or other elements. May v. Gillis, 169 N. Y., 330, 333; Street v. Central Brewing Co., 101 N. Y. App., 3. In addition, however, the words “ make all repairs ” are closely associated with the terms referring to specific kinds of repairs and should, therefore, be limited to the same general kinds as those mentioned. Richmond Ice Co. v. Crystal Ice Co., 99 Va., 239. The lessees’ covenant to repair therefore refers to what is generally termed tenantable repairs. It can not be extended under the provisions of the lease as a covenant to keep the building as such in a general state of preservation regardless of whether the condition calling for repairs was caused by ordinary wear and tear or by action of the elements.
The plaintiff’s claim involves three general items:
1. He claims that the lessees should pay the expense incurred by him in repairing the cornice and doing certain work on the building, including some painting on the outside of windows.
*458 2. He claims that the lessees should pay the expense incurred by him in doing certain work in the vaults located under the sidewalks adjacent to the building.
3. He claims that the lessees did not deliver up the premises in the condition contemplated by the lease and are liable for certain repairs made necessary by the occupancy and negligence of the lessees.
Liability for part of the third item is admitted by the defendants, which makes it only necessary for the court to ascertain the amount of that liability. The findings of fact establish it at $5,616.40.
As to the work upon the cornice and the other work included in the first of said items the lessor can not recover because the expense incurred by the plaintiff was not for repairs such as the lessees’ covenant required them to make. The mortar between the pieces of terra cotta in the cornice eroded or yielded with the result that water was admitted, which finally from freezes or otherwise caused pieces of the terra cotta to fall and endanger other parts of the cornice. The damage must be attributed to ordinary wear and tear or to the elements and can not be called a tenantable repair, such as the lessees were bound to make. It may be added that the work upon the cornice for which the lessor paid was not confined to a mere repair but resulted in a better and more permanent construction that would avoid a repetition of the breaking away of parts of the cornice from the action of the elements. The evidence shows what the plaintiff paid for the work that was done. It does not show what it was reasonably worth to have restored the cornice to its original condition, so that if it could be held that the lessees were bound to repair the cornice the evidence would be insufficient to establish the amount of the liability.
As to the second item in the claim, in the matter of work in. the vaults, it is clear, under the principles above stated, that the lessor was not bound by any covenant of his to do the work in the vaults. The findings of fact show that the vaults were not designed to be damp proof. They were constructed under the sidewalk and while they may be considered as part of the “ premises ” for the purposes of the lease, it is signifi *459 cant that the lessor’s covenant to keep the lessees in possession refers only to the “ building,” and this was owing probably to the fact that the title t'o the sidewalks was not in the plaintiff. The lessees had a right to make certain improvements in the premises, and the lease provides that they could remove such improvements upon the termination of the lease. The work done in the vaults Avas not a repair but was an improvement or betterment, and being so it can not be said that the lessees covenanted to do that work. Their covenant does not’ extend in any event to produce a better condition in the premises than they were when received. The complaint about the condition of the vaults was not made for practically 5 years after the beginning of the tenancy. At that time portions of the building, including the basement, were being occupied by the Hydrographic Office, which had installed certain printing presses or machinery, and they were crowded for room. In their possession were certain copper plates of an estimated value of a million dollars, besides charts and other valuable articles, which they desired to be safely stored, and they considered that if stored under the sidewalks in vaults, they would be safe from a destruction of the building even by fire.. These vaults on account of their dampness were not suited for storing copper plates. The Hydro-graphic Office therefore got permission of the Secretary of the Navy to occupy some of said vaults, but complained that on account of their condition they were not suited for the purposes desired. Thereupon the Secretary of the Navy called upon the plaintiff to put the said vaults in condition for use for said purposes, and after a great deal of correspondence running through many months, during which the payment of rent was suspended and its continued suspension threatened, the plaintiff remodeled the vaults at a large expense. The work he did constituted an improvement and was not a repair. He protested from the first that he was not liable under his contract to do said work. We think he was clearly right in that position. However, he did the work, and the question is whether he should be repaid under the facts of the case.. It may be questioned whether, under *460 the terms of tbe lease, that the building was rented for office purposes only, the defendant's were authorized to place machinery such as the Hydrographic Office had in the building; blit if they had that right, they could not exact of the plaintiff a betterment or improvement in the vault system to accommodate that purpose. It may be conceded that the suspension of the payment of rents would not amount to legal duress, since the plaintiff had a right of action for his rents, but the lease did not have a clause authorizing him to reenter on account of the failure to pay rent, and t’he rents were payable monthly. He objected to doing the work, protesting that he was not required by his contract to do it. The defendants insisted that he should do it and do the work so as to render the vaults useful for a specific purpose. He did the work upon their demand at their request and it was for their benefit. He can not recover the cost upon any theory that the contract required the lessees to do the work, for it did not so require, but we think that having done the work under the circumstances stated and for the purposes stated the cost should fall on those for whose benefit it was done. It does not appear that the expenditure was of any benefit to the lessor by way of added value to the building either .'or his own use or on a rental basis.
If the coudusion to be reached were to be predicted alone i the equities in the ordinary sense of the case, and thus sustained, there could be no doubt that it must be in the plaintiff’s favor and to the full extent of the expenditure by him on this account.
It must be assumed that the officials of the Government acting in the matter acted in good faith and demanded of the plaintiff only that which they thought they had a right to demand, and so thinking they felt justified in resorting to such means as were available to them to enforce their demands. They were, in our opinion, wholly wrong in their conclusion as to the rights of the United States and the obligations of the plaintiff, and the coercive measure used to enforce a compliance with their demands was wholly unjustified. But, again, we must assume their good faith and con- *461 elude that had they correctly interpreted their rights and the plaintiff’s obligations they would not have pursued the arbitrary course they did, but would have arranged to procure the betterments they desired either by providing them in the first instance at Government expense or by procuring their making by - the plaintiff under a proper contract of reimbursement.
The work was done by the plaintiff under the circumstances stated, the Government’s representatives insisting on his obligation under the contract of leasing to do it and he continuously protesting any such obligation and insisting on compensation on some proper basis, and with the resulting controversy unsolved, it is referred to this court under the statute. Plaintiff’s petition was filed under the practice of this court after and by reason of the reference.
The Navy Department, therefore, in effect submits to this court the question as to whether, as contended by it, the plaintiff is obligated under the contract of leasing to make the betterments to the vaults required of him, or whether, having complied with the requirements of the department in that respect, the plaintiff, as contended by him, is entitled to be compensated therefor. We conclude that the whole transaction, in connection with its submission to this court, implies a recognition on the part of the department of an obligation to reimburse the plaintiff for the expenditure required of him in this respect if it should be determined, as matter of law, that the contract of leasing did not require that he do the work at his own expense, and since our conclusion must be that' no such obligation rested on the plaintiff we must treat the transaction as creating an obligation on the part of the United States to reimburse the plaintiff to the extent of the required expenditure, and, being a matter within the jurisdiction of this court, the plaintiff is. entitled to judgment for the amount.
It follows that the plaintiff should have judgment in the sum of $8,673.60 on account of the second and third of said items and that the petition should be dismissed as to the first; and it is so ordered.