LINDSAY BROTHERS, INC., Respondent, v. MILWAUKEE COLD STORAGE COMPANY, Appellant.

*No. 294. Argued April 30, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 639.)

For the appellant there were briefs by *Robert A. Christensen* and *Foley & Lardner,* all of Milwaukee, and oral argument by *Mr. Christensen.*

For the respondent there was a brief by *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.*, attorneys, and *John G. Vergeront* and *Thomas G. Boyer* of counsel, all of Milwaukee, and oral argument by *Mr. Boyer*.

HEFFERNAN, J.   The lessee's general obligation in respect to the condition of the premises is contained in the clause concerning its delivery of possession at the time of the termination of the lease. That clause provides that possession shall be yielded to the lessor at the end of the term "in the same condition as the same were in at the commencement of said term, reasonable wear and tear . . . excepted."

As properly interpreted, the lessee's obligation to the lessor to repair the premises is to be measured by the condition of the premises at the time of the lease's termination.

A similar clause was explained in *Finnegan v. McGavock* (1939), 230 Wis. 112, 283 N. W. 321. The court said at pages 117, 118:

"The question may arise upon surrender under a lease which, like the present one, obligates the tenant to surrender the premises in as good condition as when received 'natural wear by reasonable use thereof and destruction by the elements and by fire excepted.' In such a case the plain purpose is to release the tenant from all claims for damage arising out of reasonable wear and tear and the action of the elements upon the building whether gradual and deteriorating or sudden and destructive. The reason for inserting such clauses and the normal and proper construction of them is that the tenant's duty of surrender should be considered to have been discharged when the property redelivered to the lessor has been subjected to ordinary use and given ordinary care by the tenant, and that all other risks which may result in surrender of the property in impaired physical condition should properly be borne by the lessor."

This court's position is in harmony with the prevailing rule in the United States. 3A Thompson, *Real Property* (1959 Replacement), p. 165, sec. 1232; 1 Tiffany, *Landlord and Tenant*, pp. 776 ff., sec. 118; 49 Am. Jur. 2d, *Landlord and Tenant*, pp. 945, 946, sec. 973.

The trial judge properly applied the *McGavock* rule to the damages that the lessor claimed for the repair of the general premises. He held that the duty of the tenant was that of ordinary care and that only such items of damages that resulted from the lessee's lack of ordinary care were to be excepted from the reasonable wear and tear exoneration otherwise afforded to the lessee. He properly concluded that, in the absence of any special provisions, the defendant's duty to repair was simply that of maintaining the premises in sufficiently good condition that they could be surrendered in conformity with the termination clause. When a tenant quits the premises in conformity with such a clause, the lessee *ipso facto* complies with any obligations to make repairs during the term.

In the case of *Presbyterian Distribution Service v. Chicago National Bank* (1960), 28 Ill. App. 2d 147, 159, 171 N. E. 2d 86, the court held, in regard to a repair clause similar to that before us, that the tenant was only required to yield up the premises "in good condition, loss by fire and ordinary wear excepted." Since there was no proof that the damages had been occasioned by anything but ordinary wear, the court found no additional obligation on the part of the tenant to repair. In *Kanner v. Globe Bottling Co.* (1969), 273 Cal. App. 2d 559, 565, 78 Cal. Rptr. 25, the court stated:

"The exception of ordinary wear and tear contemplates that deterioration will occur by reason of time and use despite ordinary care for its preservation . . . . A tenant is not required to renovate the premises at the expiration of his lease; a covenant to repair should be reasonably interpreted to avoid placing any unwarranted

burden of improvement of the lessor's premises on the lessee."

In accord with the general rule that repair and termination clauses should be construed together as imposing the same obligation are: *Fisher v. Temco Aircraft Corp.* (Tex. Civ. App., 1959), 324 S. W. 2d 571; *Corbett v. Derman Shoe Co.* (1959), 338 Mass. 405, 155 N. E. 2d 423; *Miller v. Belknap* (1954), 75 Idaho 46, 266 Pac. 2d 662; *Zoslow v. National Savings & Trust Co.* (D. C. Cir., 1952), 201 Fed. 2d 208; 51C C. J. S., *Landlord & Tenant,* pp. 1051–1053, sec. 409.

*Finnegan v. McGavock, supra,* page 119, cited with approval a Michigan decision, *Van Wormer v. Crane* (1883), 51 Mich. 363, 16 N. W. 686, for the same proposition.

Clause 10 of the lease in the instant case provides in part, after stating that the lessor has the responsibility in respect to the roof and exterior walls, that the "Lessee shall be responsible for and shall make all other usual and necessary repairs which are not the express obligation of Lessor hereunder."

This merely imposes upon the lessee the obligation to make such repairs as may be necessary for his *use* of the premises. In other words, during the course of the tenancy, the lessee cannot impose any obligation upon the lessor to make good any damage or deterioration of the premises which may have made it more difficult or impossible for the lessee to use the premises. This obligation has nothing to do with the condition of the premises at the time of the termination of the lease. The lessee's obligation for repairs is simply to prevent him from claiming a breach of the lease by the landlord during the term for the failure to make repairs that were the lessee's obligation and not the lessor's. During the term of the lease, the lessee cannot claim a breach for the lessor's failure to repair unless, as in this case, the roof and exterior walls are not kept in a proper state of repair.

A reasonable reading of the repair and replacement clause of the lease reveals that the purpose of the paragraph is the delineation of the responsibilities of the parties during the period of the tenancy. A clause of this kind is properly construed to impose only a minimal duty on the tenant to undertake repairs. He is obliged to keep the premises in such condition that he can use them for the purposes for which they are leased, but he is not obligated to do more. Upon termination, a lessee is in full compliance if the premises, except for ordinary wear and tear, are in the same condition as they were at the commencement of the term. 2 Powell, *Real Property,* p. 372.5, sec. 241; 1 *American Law of Property,* pp. 353–355, sec. 3.80.

The trial judge made an award of approximately $100 for damages to the premises that were occasioned by the lessee's want of ordinary care during the term, and, but for the construction placed upon the repair clause relating to elevators, we would conclude that the trial judge's decision was fully in accord with established law. We disagree, however, with his conclusion that the lessee had an obligation to repair the elevators and to respond in damages. The clause in question provides:

"Lessee shall be responsible for and shall make all other usual and necessary repairs which are not the express obligation of Lessor hereunder. Lessee's obligation to make repairs shall include without limitation by this enumeration the making of usual and necessary elevator repairs, the maintenance of the elevators on the leased premises and replacement of all broken glass."

The trial judge held that this clause imposed a special duty to repair the elevators and the duty was not limited by the lessee's obligation to yield up the premises in the same condition as they were at the beginning of the term, ordinary wear and tear excepted.

We conclude that the language in the lease, "without limitation by this enumeration," does not impose a special

duty to repair the elevators, but is a statement that the lessee's duty to repair the elevators was no less and no greater than his duty to repair the balance of the premises. In short, the clause merely made it clear that the tenant's duty to repair was identical for all of the leased property, including the elevators.

The term, "usual and necessary," appears in both the sentence imposing a general duty to repair and in the sentence referring to the elevators. The duty to repair the elevators and the general premises was made the same. The duty with respect to the elevators is, therefore, to be measured by the defendant's obligation to yield up the premises, including the elevators, in the same condition as they were at the time of the commencement of the term, ordinary wear and tear excepted.

It is also argued that the lessee had a greater duty to repair the elevators as a result of Clause 6, which required the lessee to:

"[O]bey and comply with all rules, regulations, ordinances, laws and orders of whatsoever nature enacted or prescribed by the city, county, state or any board, commission . . . now and hereafter in force with respect to the maintenance, care, use, and enjoyment of the leased premises . . . ."

The record shows that approximately one month after the termination of the lease, the lessor was served with an order to repair the elevators and did so at its own expense. The lessor now claims that this was a contractual obligation expressly assumed by the lessee, and that, as a consequence, the lessor is entitled to recover from the lessee the cost of making the ordered elevator repairs. We think not. The clause in question refers to the "maintenance, care, use, and enjoyment of the leased premises." That language contemplates that in the event of any order by a public authority which would prevent the lessee from making a safe and proper use of the property during the term of his lease, it is his obligation, and not the lessor's,

to correct the defect. If, by an order of the public authority, the use of the elevators had been forbidden as a safety measure, the lessee could not claim a breach of the lease or a constructive eviction but would be required to comply with the orders of the public authority if he wished to remain in possession and use the premises for the purposes intended. The clause does not contemplate that the lessee shall have any responsibility whatsoever to obey the orders of a public authority after the termination of the lease and a yielding up of possession. The record in this case, moreover, does not show that the inspection upon which the municipality's repair order was based was made during the term of the lease, but the record shows that no public order was ever directed to the lessee in this respect while it was in possession of the premises.

Under such clause, during the course of the tenancy a tenant is obligated to bear the expense of complying with orders of a public authority in order that his continued occupancy will comply with the law. It imposes no special obligation on the lessee after the termination of the tenancy if the premises are in the same condition as they were at the commencement of the term, ordinary wear and tear excepted. *Gaddis v. Consolidated Freightways* (1965), 239 Or. 553, 398 Pac. 2d 749; *Strecker v. Barnard* (1952), 109 Cal. App. 2d 149, 240 Pac. 2d 345; *Central Railway Co. of New Jersey v. De Cozen* (N. J. Sup. Ct., 1922), 118 Atl. 625; *Seymour v. Picus* (1894), 9 Misc. 48, 29 N. Y. Supp. 277.

As a contractual matter, the parties to a lease could agree that a lessee would assume an express and special obligation to place the premises in full compliance with the orders of any public authority that might be made after the lease's termination if the necessity for repairs occurred during the term. In this case, however, no such contractual obligation was imposed.

We believe that the Washington Supreme Court properly analyzed a situation similar to the instant one in *Puget Investment Co. v. Wenck* (1950), 36 Wash. 2d 817, 221 Pac. 2d 459. The lease in that case required the tenant to keep and use the premises in accordance with the directions of public officials. Shortly before the end of the term, the fire department directed that certain unsafe conditions be corrected. The Washington Supreme Court held that the tenant's duty was discharged by complying with his obligation to yield up the premises, ordinary wear and tear excepted, in the same condition that they were at the commencement of the term and that no additional obligation was imposable following the termination of the leasehold. The court stated:

"There is no question but that, if city authorities had forbidden [the tenant's] use of the premises until these corrections were made, [the tenant] would have had the responsibility of making such changes if it desired to continue using the premises. . . ." (P. 830)

"We do not believe that a covenant of this kind should be construed as an affirmative obligation to repair, alter or improve. It is intended only to place upon the lessee rather than the lessor the responsibility for making any such repairs, alterations or improvements which the lessee finds necessary in order to enjoy the use of the premises; to indemnify the lessor for any expenses resulting directly from unlawful use of the premises; and to provide the lessor with a basis for requiring the lessee to cease any unlawful activity which may occasion expense for the lessor or damage to the reversion." (P. 831)

We approve of the reasoning of the *Puget Case*. While the duty to conform to an order of public authorities affects the tenant's obligation during the course of the lease, such an order is ineffective to modify his obligation for liability to make any repairs following the termination of the lease.

In this case, therefore, the lessee has no responsibility for any repairs to the elevators in the absence of a finding that they were damaged by other than ordinary wear and tear. While the trial judge made the specific finding that motorized forklift trucks were used in elevators not designed for such use, he made no finding that the damage occasioned thereby was not the result of ordinary wear and tear.

In this court, the appeal was heard upon a partial transcript, and we are aware of no evidence, though it may exist in the record, to show that the damage to the elevators was occasioned by the lessee's neglect or abuse. It is therefore necessary that the record be remanded to the trial court for further proceedings to determine whether a finding can properly be made that the damage was occasioned by other than reasonable wear and tear.

We make no disposition of the plaintiff's cross appeal, which contended that the trial judge's award of attorneys' fees was inadequate. That award was based in part upon the trial court's judgment permitting recovery for damage to the elevators. Upon further proceedings, it may be determined that the elevator damage was within the ambit of ordinary wear and tear and the plaintiff is entitled to no more than nominal attorneys' fees occasioned by recovery of the minor items of damage that the parties agree were caused by the defendant's neglect. In any event, a redetermination of attorneys' fees will be required. The standards which this court applies and will approve in setting attorneys' fees have been stated in *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. 2d 479, 488, 111 N. W. 2d 419; *Giffen v. Tigerton Lumber Co.* (1965), 26 Wis. 2d 327, 331, 132 N. W. 2d 572.

We conclude that those portions of the judgment which awarded damages for the repair of the elevators and awarded attorneys' fees must be reversed and the cause remanded for further proceedings.

*By the Court.*—Judgment reversed in part, and cause remanded for further proceedings consistent with the directions of this opinion.