**In re 1600 ARCH LIMITED PARTNERSHIP.**

**1600 ARCH LIMITED PARTNERSHIP**

v.

**INA CORPORATION, et al.**

Bankruptcy No. 95–166.
Adv. No. 96–0006.
Civil Action No. 96–2797.

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1996.

William A. Harvey, Mindy Friedman, Irene M. McLafferty, Philadelphia, PA, for plaintiff.

Robert W. Hayes, Philadelphia, PA, for defendant.

### MEMORANDUM

O'NEILL, Senior District Judge.

Plaintiff 1600 L.P. asserts that defendant INA, a former tenant, breached several provisions in commercial leases between the parties.[1]  Defendant seeks dismissal of plain-

---

**1.** Plaintiff is the lessor's successor-in-interest.

tiff's claim under § 14.01 of the leases.[2] Section 14.01 provides that,

> [n]otwithstanding Tenant's obligations under any other provision of this Lease, Tenant shall, at its own cost and expense, during the Term of this Lease, comply with any and all present and future laws, rules, orders, ordinances, regulations, statutes and requirements ... prior to the assessment of any penalties for noncompliance, irrespective of the nature of the work required to be done, extraordinary as well as ordinary, of [any] public or quasi-public authorities now existing or hereafter created ... and of any applicable Fire Rating Bureau or other body exercising similar functions, affecting the Premises ... or the maintenance, use, or occupation of the Premises, whether or not such changes or additions be required on account of any particular use to which the Premises, or any part thereof, may be put; and Tenant shall also comply with ... any and all provisions and requirements of any fire, liability or other insurance policy required to be carried by Tenant under the Provisions of this Lease....

Defendant asserts that its duties under § 14.01 do not extend beyond the end of the lease and that it cannot be held liable for compliance work plaintiff was required to perform after the lease expired.

When the terms of a lease are not ambiguous I must "determine the intention of the parties from the language of the lease alone" and not from extrinsic evidence. *Cusamano v. Anthony M. DiLucia, Inc.*, 281 Pa.Super. 8, 421 A.2d 1120, 1122 (1980). The plain language of § 14.01 imposes duties on the tenant "during the Term of the lease." It provides no basis for requiring the tenant to bear the cost of code compliance work after the lease ends even if the need for such work can be traced back to the term of the lease.

The cases interpreting similar compliance clauses have reached the same conclusion. In *Puget Inv. Co. v. Wenck*, 36 Wash.2d 817, 221 P.2d 459 (1950), the lease required the tenant to "at all times keep and use said premises in accordance with applicable laws and ordinances and in accordance with applicable directions, rules and regulations of public officials and departments at the sole expense of lessee." *Id.* at 465. Before the lease expired the fire department cited several violations of city ordinances. *Id.*

The court nonetheless held that the tenant was not responsible for the expense of rectifying violations after the lease expired even though they arose during the lease term. As the court explained, the lessor

> has been subjected to no penalty or expense because of [tenant's] violation of such laws. It is true [lessor] will have to make these changes itself, at its own expense.... But this expense has not been occasioned by [tenant's] violation of the laws and ordinances, and would have been required even if the property had stood vacant and unleased during the actual term of the lease.

*Id.* at 466. Accordingly the court concluded that "a covenant of this kind should be construed as an affirmative obligation to repair, alter or improve. It is intended only to place upon the lessee rather than the lessor the responsibility for making any such repairs ... which the lessee finds necessary in order to enjoy the use of the premises...." *Id.* at 466.[3]

Similarly, in *Lindsay Bros., Inc. v. Milwaukee Cold Storage Co.*, 58 Wis.2d 658, 207 N.W.2d 639, 644 (1973), the tenant had covenanted to "obey and comply with all rules, regulations, ordinances, laws and orders of whatsoever nature enacted or prescribed ...

---

**2.** Plaintiff alleges breaches of the § 12.01 repair and maintenance covenant; the Article 26 trade fixture removal clause; the Article 29 surrender clause; the § 14.01 compliance-with-law clause; and the § 6.03 notice-to-vacate requirement. Defendant seeks dismissal or summary judgment only as to the last two claims.

**3.** Compliance clauses also "indemnify the lessor for expenses directly resulting from unlawful use." *Id.*, 221 P.2d at 466. However, when landlords incur expenses after a lease expires and such expenses would have arisen even had the premises remained vacant, such expenses do not directly result from unlawful use and are not recoverable under the compliance clause.

now and hereafter in force with respect to the maintenance, care, use, and enjoyment of the leased premises...." *Id.* at 641. The court concluded that the "clause does not contemplate that the lessee shall have any responsibility whatsoever to obey the orders of a public authority after the termination of the lease and a yielding up of possession." *Id.* at 644. The court noted that the parties were free to negotiate "an express and special obligation to place the premises in full compliance with the orders of any public authority that might be made after the lease's termination if the necessity for repairs occurred during the term. In this case, however, no such contractual obligation was imposed." *Id.* at 645.

Most recently in *Fisher Properties, Inc. v. Arden–Mayfair, Inc.,* 106 Wash.2d 826, 726 P.2d 8, 18 (1986) (en banc), the court reversed an award of damages under a compliance clause despite its conclusion that violations existed during the lease term. The court held that since the tenant was able to use the premises without strict compliance and since authorities "never ordered [tenant] to make repairs or shut down the premises for noncompliance" the trial court erred in finding a breach of the compliance clause.

In the case before me the parties could have bargained to make the tenant responsible for compliance work whether during or after the lease term if the need for it arose during the lease term. They have not done so. Rather, they have made the tenant responsible for compliance only "during the Term of the lease." Therefore as in *Puget, Lindsay* and *Fisher* I find that the clause at issue "imposes no special obligation on the lessee after the termination of the tenancy." *Lindsay,* 207 N.W.2d at 644. *Accord In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789, 802 (Bankr.N.D.Ill.1985) ("[r]ather than construing the [compliance] covenant ... as an affirmative obligation ... this court concludes that its intent is only to place upon the lessee rather than the lessor the responsibility for making any repairs, altera-

tions or improvements which the lessee finds necessary to enjoy the use of the premises").

I predict that the Pennsylvania Supreme Court would interpret the clause at issue in the same manner.[4] Such clauses allow lessors to lease properties knowing that they cannot be called on during the lease to perform any work necessary for the tenant's continued lawful use and occupation. When they receive rents throughout the lease without incurring any penalties, without being called on to perform any compliance work and without any risk of losing rental payments even if authorities order the tenant to vacate the premises, they receive the benefit of the bargain struck in such clauses.

Tenants who make such covenants agree that they will not demand assistance from the landlord if they must perform work to continue their occupancy and chosen use of the premises. In effect they covenant to hold the landlord harmless from any legal requirements affecting the premises throughout their occupancy thereof. The tenants under such clauses thus assume the risk that if they fail to comply with the law they will incur penalties or be forced to cease occupancy or modify their use of the premises while remaining fully liable for rent.

Tenants do not, however, covenant to ensure the building's fitness for lawful occupancy after their own lease ends. Thus if they are able to complete their tenancy "without strict compliance" with applicable laws, *Fisher,* 726 P.2d at 18; *Puget,* 221 P.2d at 465, they are not liable for the costs of post-termination compliance work that would have been necessary even if the property had stood vacant. The fact that the need for such work arose during the lease is immaterial when the landlord was held harmless throughout the lease term, which is all it bargained for. In the instant case the complaint does not allege that plaintiff was required to pay any penalties, perform any work or otherwise respond to compliance matters during the lease term. Thus even construing the complaint in the light most favorable to plaintiff I cannot find that it

---

4. The parties agree that Pennsylvania law ap-   plies. Pennsylvania courts have not addressed

states a claim under § 14.01.[5]

Although plaintiff does not cite any case enforcing a compliance clause after termination of the lease, plaintiff attempts to distinguish the foregoing cases on the grounds that the covenants in those leases were "use-restrictive" and limited the tenant's compliance duties to requirements arising from the tenant's particular use of the premises. I cannot agree.

In *Puget* the tenant agreed to "at all times keep and use" the premises in accordance with "applicable laws and ordinances." 221 P.2d at 465. In *Lindsay* the tenant agreed to comply with "all" laws and regulations "of whatsoever nature enacted or prescribed ... now or hereafter in force with respect to the maintenance, care, use, and enjoyment of the leased premises." 207 N.W.2d at 643. In *Fisher* the tenant covenanted to "bear all expenses of complying with all orders, ordinances, rules, regulations, requirements, and inspections ... relative to the demised premises." 726 P.2d at 18. None of those courts noted any use-restrictiveness in construing those clauses and no such restriction can be discerned from the lease language. I thus find no meaningful distinction between the clauses interpreted in those cases and § 14.01 in this lease.

Moreover even assuming arguendo that the *Puget, Lindsay* and *Fisher* courts narrowed the tenant's obligations on the grounds that the compliance clauses before them were use-restrictive this distinction still would not extend the effect of § 14.01 beyond the end of the lease. Plaintiff is correct that defendant's duties under § 14.01 were broad and applied "irrespective of the nature of the work required to be done" even if it was structural, permanent or necessary for any further use of the premises. Such duties are, however, satisfied when plaintiff is held harmless from any penalties or compliance costs of any nature throughout the lease term.

Use-restrictiveness bears on the breadth and not the duration of the tenant's compliance obligation. The nature and breadth of duties during the lease term cannot extend their duration thereafter when § 14.01 plainly limits those duties to the period "during the Term of the lease." Whether a compliance clause is use-restrictive or expansive parties may bargain to limit its effect to the term of the lease. They may on the other hand bargain to extend obligations indefinitely regardless of when non-compliance dating back to the lease term is discovered. The plain language of § 14.01 in this case reveals that the parties have done the former.

■ Defendant has also moved for partial summary judgment on plaintiff's claim for additional rental payments. Plaintiff seeks additional rental payments under § 6.03 of the lease which requires two years' notice of intent to vacate. Plaintiff asserts that because defendant did not provide Notice to Vacate until April 20, 1994 the lease extended beyond its November 15, 1995 termination date until April 20, 1996. Defendant asserts that it advised plaintiff before November 15, 1993 that it would not extend the lease beyond November 15, 1995.[6] I find that there is a genuine issue of material fact as to whether defendant's failure to give notice to vacate extended the lease beyond its November 15, 1995 termination date.[7] I will there-

the issue at hand.

5. Because duties under § 14.01 do not extend past the end of the lease I need not decide whether the Americans with Disabilities Act is a law "affecting the Premises" under § 14.01. Nor need I decide whether there are genuine issues of material fact as to noncompliance or whether to strike certain affidavits in that regard.

6. Plaintiff's statement that the lease ended on November 15, 1995 refers only to what the lease provides. *See* Complaint at ¶ 8. It does not constitute an admission that the lease was not extended thereafter. The fact that plaintiff leased the premises to a new tenant immediately after November 15, 1995 is inconclusive as it may represent merely mitigation of damages arising from premature vacancy.

7. Sections 4.01–.02 of the lease do not eliminate the genuine issues of material fact as to defendant's obligation to pay rent after November 15, 1995. Defendant asserts that it is relieved of any duty to pay rent after November 15, 1995 under §§ 4.01–.02 which abate its rental obligation for any whole floor that it turns over to the landlord and that the landlord rents to a new tenant. Genuine issues of material fact exist as to the extent of abatement even if §§ 4.01–.02 permit turnover of all floors.

fore deny the motion for summary judgment on plaintiff's claim for additional rental payments.